**STATE of Missouri, Respondent,**

v.

**Mitchell McALISTER, Appellant.**

No. WD 34102.

Missouri Court of Appeals,
Western District.

May 10, 1983.

Thomas J. Marshall, Public Defender, Moberly, for appellant.

John Ashcroft, Atty. Gen., Janet E. Papageorge, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P.J., and PRITCHARD and KENNEDY, JJ.

TURNAGE, Presiding Judge.

Mitchell McAlister was found guilty by a jury of carrying a concealed weapon under § 571.030.1(1) RSMo 1981. Upon the jury's failure to assess punishment, the court sentenced McAlister to two years imprisonment to run consecutively with any other terms which he was serving.

On this appeal, McAlister contends that the evidence was insufficient to support his conviction, and that the court erred in giving an instruction in the form of MAI–CR2d 4.50. Reversed and remanded.

In October of 1981, McAlister and Mike Conger were cell mates at the Missouri Training Center for Men in Moberly. On the afternoon of October 7, 1981, McAlister and Conger entered the bakery, where they both worked. Shortly thereafter, a bakery supervisor noticed Conger making unusual movements. The supervisor frisked Conger and found a homemade knife concealed in his clothing. Upon this discovery, the supervisor took Conger to the guard office.

McAlister testified that after Conger left he was joined in the bakery by another inmate. McAlister said that at that point he threw a piece of paper into the trash barrel and found a homemade knife in the barrel. He picked the knife up, showed it to the other inmate, and then put it under his coat and walked down the hall to the guard office. McAlister walked into the office, opened his coat, threw the knife on the table, and said "I will ride with my dog." [1] The state presented evidence from the guard and the bakery supervisor that they had both learned that McAlister was carrying a knife when he walked into the guard's office, opened his coat, threw the knife on the table, and said that he would ride with his dog.

On this evidence, the jury retired to deliberate at 2:00 p.m. Without communication from the jury, the court announced at 4:00 p.m. that it was going to give an additional instruction in the form of MAI–CR2d 4.50 and an additional verdict form in the form of MAI–CR2d 4.52, and that it planned to have the deputy hand these to the jury. When the court inquired if counsel had any objection to this, McAlister's attorney said that while he had no objection to the deputy's delivering the instruction and verdict form to the jury rather than having the jury brought back into the court room, he objected to the giving of the additional instruction and verdict form. The court nonetheless instructed the deputy to deliver the new instruction and verdict form to the jury. At 4:05 p.m. on that same day, the jury returned a verdict of guilty without assessing any punishment.

McAlister first contends that the evidence was insufficient to support his conviction because the evidence was uncontradicted that he found the knife in a trash barrel and was only taking the knife to turn it in. Section 571.030.1(1) provides that a person commits the crime of unlawful use of weapons if he knowingly carries a knife or certain other weapons concealed upon or about

1. The record indicates that this is a slang expression meaning that McAlister wanted to go to the main penitentiary with his friend Conger.

his person. That section does not require that a knife be concealed or carried for any particular distance or length of time but rather provides simply that if the knife is carried concealed on or about the person, then the crime has been committed.

■ The jury was not obliged to believe the testimony of either McAlister or the other inmate that McAlister had found the knife in the trash barrel and that he was simply taking the knife to turn it in. The jury could have believed that even if McAlister had found the knife in the trash barrel, he could have notified the guard of its presence without carrying it into the guard's room concealed on his person. In light of these facts in combination with the fact that McAlister admitted that he had carried the knife concealed on or about his person, there was sufficient evidence from both the state and McAlister to support the finding of guilt.

McAlister next contends that the court erred in giving MAI–CR2d 4.50 without ascertaining whether or not the jury was unable to agree upon punishment. Paragraph 1 of the Notes on Use to MAI–CR2d 4.50 states that the court has discretion to give the instruction, whether requested or not, in all but capital murder cases, provided that it is given subject to directions in the Notes on Use. The Notes further direct that the instruction is to be given if the court finds that the jury cannot agree on a punishment after engaging in due deliberation. McAlister contends that the circumstances under which the instruction was given in this case amounted to coercion.

The giving of MAI–CR2d 4.50 was considered in *State v. Wells,* 639 S.W.2d 563 (Mo. banc 1982). In *Wells,* there was also no finding that the jury could not agree on a punishment. The *Wells* court stated that:

> [I]t would seem at least a determination by the court that the jury is uncertain as to punishment and not guilt be a prerequisite for the giving of the instruction in the form it was submitted. 639 S.W.2d at 568[6].

The court also noted that § 557.036.2 provided that the instruction is to be given, if at all, only after due deliberation by the jury and a determination by the court that the jury cannot agree on punishment. The *Wells* court said that a determination by the court that the jury is unable to agree on punishment is necessary lest the statute be stripped of its plain meaning. The court further observed that it is implausible that a judge may determine whether or not a jury is hung on the question of punishment before knowing if a determination of guilt can be reached. In *Wells* the jury did return to the court room, at which time it indicated that it was split at 11 to 1 without indicating whether it had reached a decision as to guilt or innocence.

The *Wells* court expressly declined to decide whether or not the giving of MAI–CR2d 4.50 before the jury had reached a guilty verdict and before the court had determined whether or not the jury could agree on punishment was prejudicial error. This is the precise issue presented by the instant case. Because the giving of the instruction in this case clearly violated the Notes on Use, this court finds that the trial court committed error, and that its prejudicial effect is to be judicially determined. Rule 28.02(e).

A determination as to the prejudicial effect in this case requires consideration of two additional factors. First, the instruction given by the court omitted the last paragraph of MAI–CR2d 4.50, which would have advised the jury that it is the primary duty and responsibility of the jury to determine guilt and to fix the punishment. Secondly, in giving the additional form of verdict the court failed to follow MAI–CR2d 4.52 in that the form omitted the last clause, which provides "[b]ut we are unable to agree upon the punishment." The verdict returned by the jury found McAlister guilty as submitted in the instructions, but made no statement to the effect that the jury was unable to agree upon the punishment.

■ Section 557.036 places the primary duty of assessing punishment upon the jury. This principle is reiterated in the last para-

graph of MAI–CR2d 4.50. By giving the instruction after the jury had deliberated two hours but without any finding by the court that the jury was unable to agree upon punishment, the trial court invited the jury to abdicate its primary duty to fix punishment. This was further compounded by the omission of the last paragraph of the instruction, which would have advised the jury that it was their primary duty to fix punishment. The court essentially told the jury to return a verdict on the guilt question without giving any consideration to the question of punishment, which would be decided by the court. Thus, because it encouraged the jury to abdicate its primary responsibility of fixing punishment, the trial court committed prejudicial error.

The judgment is reversed and the cause is remanded for a new trial.

All concur.