STATE of Missouri, Respondent,

v.

Donald STEWARD, Appellant.

No. 69036.

Supreme Court of Missouri,
En Banc.

July 14, 1987.

Holly G. Simons, Office of Public Defender, St. Louis, for appellant.

William L. Webster, Atty. Gen., Paul La-Rose, Asst. Atty. Gen., Jefferson City, for respondent.

RENDLEN, Judge.

Donald Steward (appellant) was indicted in separate counts for the first degree mur-

ders of two sisters, Ruthie Brown (Ruthie) and Faustina Brown (Faustina) pursuant to § 565.020.1.[1] It was alleged (Count I) appellant while "acting with others, after deliberation, knowingly killed" Ruthie Brown "by striking her" on October 7, 1984 and (Count II) that appellant while "acting with others, after deliberation, knowingly caused" the death of Faustina Brown "by striking her" on October 7, 1984. Additionally (Count III) he was charged with first degree burglary (§ 569.160)[2] and (Count IV) with first degree robbery (§ 569.020).[3]

Following a directed verdict for appellant on Count IV, appellant was convicted on the three remaining counts and it is from these convictions the appeal is taken. After reversal in the Eastern District, the cause was transferred and it is decided here as though on original appeal. Mo. Const. art. V, § 10 (1945 amended 1970 and 1976).

At trial, the state presented evidence that appellant would have been aware the two sisters kept substantial sums of money scattered around their apartment. The state sought to prove that appellant and his alleged accomplices had entered and assaulted the two sisters in their apartment in order to steal the money which they kept there.

Challenging the sufficiency of the evidence as to the murder charges, appellant contends: (1) no evidence was introduced that he or the alleged accomplices struck Ruthie; (2) that any evidence of causal relationship between his conduct or the actions of the alleged co-participants and the death of Faustina was "too attenuated" to demonstrate appellant was aware such activities were "practically certain" to cause her death; and (3) no evidence demonstrated deliberation as to either murder count.

When examining for the sufficiency of the evidence, our role is to "accept as true all evidence whether circumstantial or direct, tending to prove [appellant] guilty together with all reasonable inferences supportive of the verdict." *State v. Brooks*, 618 S.W.2d 22, 23 (Mo. banc 1981). Additionally, we must "disregard those portions of the record contrary to the verdict, mindful that our function is not to weigh the evidence but to determine 'whether there was sufficient evidence from which reasonable persons could have found [appellant] guilty as charged.'" *Brooks*, 618 S.W.2d at 23, quoting *State v. Kelly*, 539 S.W.2d 106, 109 (Mo. banc 1976), quoting from *State v. Johnson*, 510 S.W.2d 485, 487 (Mo.App.1974).

■ We first determine whether the evidence presented was sufficient to support a finding that Ruthie was struck by either appellant or an accomplice. A forensic pathologist who performed the autopsy testified she found "an area of [Ruthie's] fore-

---

1. All statutory references are to Missouri Revised Statutes 1986 unless indicated otherwise.
 Section 565.020.1 provides:
  A person commits the crime of murder in the first degree if he knowingly causes the death of another person after deliberation upon the matter.

2. Section 569.160 provides:
  1. A person commits the crime of burglary in the first degree if he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein, and when in effecting entry or while in the building or inhabitable structure or in immediate flight therefrom, he or another participant in the crime:
   (1) Is armed with explosives or a deadly weapon or;
   (2) Causes or threatens immediate physical injury to any person who is not a participant in the crime; or

(3) There is present in the structure another person who is not a participant in the crime.
 2. Burglary in the first degree is a class B felony.

3. Section 569.020 provides:
  1. A person commits the crime of robbery in the first degree when he forcibly steals property and in the course thereof he, or another participant in the crime,
   (1) Causes serious physical injury to any person; or
   (2) Is armed with a deadly weapon; or
   (3) Uses or threatens the immediate use of a dangerous instrument against any person; or
   (4) Displays or threatens the use of what appears to be a deadly weapon or dangerous instrument.
  2. Robbery in the first degree is a class A felony.

head where there was a little swelling, an area of contusion and a slight abrasion where a little bit of skin was scraped off...." Additionally, the autopsy revealed "several fractured ribs between the two right and left sides." An investigating police officer testified Faustina told him that "Donald [appellant] was the one who struck her and her sister numerous times." From these facts the jury could have reasonably concluded that one of the participants struck Ruthie.

█ Appellant next contends that any evidence of causal relationship between the death of Faustina and the actions of those implicated is "too attenuated" for purposes of showing he was aware that death was "practically certain" to result. The same pathologist, who performed the autopsy on Ruthie supervised the autopsy conducted on Faustina. She testified that on October 7, 1984 Faustina sustained a head injury as the result of an assault at her apartment and died on January 11, 1985, from the combined causes of a pulmonary infarction, a urinary tract infection, and a "generalized infection in the bloodstream." This witness opined that "the underlying cause that started all of this was the head injury..." and concluded that "the *proximate cause* [was] a head injury which put her in a position for all of these complications." (Emphasis added.) Appellant makes essentially the same argument presented and rejected in *State v. Bolder*, 635 S.W.2d 673, 679 (Mo. banc 1982), *cert. denied*, 459 U.S. 1137, 103 S.Ct. 770, 74 L.Ed.2d 983 (1983) and for the reasons discussed in *Bolder* we are also unpersuaded here. In *Bolder*, the defendant, a prison inmate, stabbed another inmate who ultimately died not from the stab wounds but rather the resulting infection. *Id.* 635 S.W.2d at 678. We noted it "[made] no difference that [the victim] died from an infection resulting from the stabbing rather than from the stabbing itself." *Id.* at 680. Similarly, it is of little consequence that Faustina may have died of complications resulting from the head injury she sustained rather than the head injury itself. The jury could have reasonably found that the cause of her death was not

so attenuated that appellant was unaware that death would be "practically certain."

█ The final challenge to the evidence relates to the finding of deliberation. We have held that "[a] deliberate act is a 'free act of the will,' [citations omitted] that is done 'in furtherance of a formed design to gratify a feeling of revenge or to accomplish some other unlawful purpose and while not under the influence of a violent passion suddenly aroused by some provocation,' [citation omitted]." *State v. Davis*, 653 S.W.2d 167, 172 (Mo. banc 1983). The evidence showed that appellant had run errands for the sisters, who frequently kept substantial sums of money in their apartment "wrapped in tissue or handkerchiefs...." Also, that Michael Sturghill (Sturghill), another of the individuals charged in this matter, was found with one hundred ninety-five dollars, some of which was bloodstained, in one of his tennis shoes. In addition, bloodstained gauze, used by appellant to cover a cut sustained the evening of the assaults, was also introduced at trial and the blood type of that found on the gauze matched that on the money Sturghill concealed in his shoe. From this evidence viewed in conjunction with the testimony that appellant struck the victims "numerous times," the jury could have concluded appellant acted with deliberation.

Appellant next argues that comments of the trial judge to the jury, after deliberations had commenced, constituted an improper instructional substitute for MAI–CR2d 1.10 which coerced the jury to return a verdict. The state argues that the remarks did not constitute a coercive instruction, that appellant failed to preserve his challenge by not objecting at trial, and that the "general and nonspecific allegations of error" in his motion for new trial was insufficient to preserve the claim of error.

The cause was submitted to the jury at 12:30 p.m. on August 13, 1985. At 5:05 p.m. the trial judge had the jury brought to the courtroom at which time he inquired about any votes taken and the numerical standing on any such votes. At that time,

the trial judge asked whether the jurors thought a verdict might be reached following further deliberation; the jurors indicated that they believed agreement on a verdict was possible. During this exchange the trial judge told the jurors he was not attempting "to tell [them] how long [they were] going to deliberate or should deliberate." After returning for further deliberation, the jury sent two questions dealing with punishment to the court at 8:00 p.m.[4] The jury was again returned to the courtroom at 8:15 p.m. where the following occurred:

THE COURT: Please do not assume in my questions or in my discussion here with you that I have an opinion as to how long you should deliberate. Should have—Should continue, whatever, I have no opinion as to that.

\*   \*   \*   \*   \*   \*

THE COURT: All right. Is it your opinion that any further balloting will arrive at a unanimous verdict on the three counts presented to you because *you have to give me a verdict in order to complete entire* [sic] *work of the jury. You have to give me a verdict. Guilty or not guilty on each of the three counts placed against you.* Count I, Count II, and Count III.

Do you have a feeling that if you continue deliberating you will arrive at a unanimous verdict on each of the three counts?

THE FOREWOMAN: Yes.

THE COURT: Is there any juror who disagrees with anything that the foreman—forewoman has now told us? I'm not encouraging this agreement, I'm only encouraging openness in your response. So if you disagree you disagree and you should say so because very frankly if you all say to me, Judge, we should continue to deliberate, there is a chance we will arrive at verdict, [sic] I don't care what the verdicts are. And under those

circumstances considering all the time in this trial and effort that has been put into it and importance of this trial to both parties, I would, of course, ask you continue your deliberation, but that's what I intend to do.

(Emphasis added.) At 8:30 p.m. the jury again retired and at 9:05 p.m. returned its verdict of guilty on the three remaining counts.

Before addressing the propriety of the trial judge's remarks made at 8:15 p.m., we first consider whether the point has been properly preserved. The record indicates defense counsel did not object to any of the 8:15 p.m. exchange now alleged to constitute error. Rule 28.03 provides:

*A party may, but is not required to, object specifically or generally on the record* to the refusal of any instruction or verdict form which he has requested, or to instructions or verdict forms to be given at the request of any other party, or to *instructions* or verdict forms *which the court on its own initiative has given or failed to give.* However, specific objections to given or refused instructions and verdict forms shall be required in motions for new trial unless made on the record at the time of trial. Objections made at time of trial to the giving or refusing of instructions and verdict forms may be supplemented or enlarged in motions for new trial.

(Emphasis added.) Appellant's complaint is directed toward the trial judge's failure to give MAI–CR2d 1.10 and in this regard Rule 28.03 indicates a party is "not required to, object specifically or generally on the record" when the court has "failed to give" an instruction "on its own initiative" and for this reason appellant's claim of error was not waived by absence of objection at trial.

■ The question then arises whether the claim of error was adequately present-

---

**4.** While reading the instructions to the jury, prior to submission of the case, the trial judge apparently made an erroneous statement on the subject of punishment. Recognizing his error had generated confusion, he attempted to properly state the law on the subject when the jury

was assembled in the courtroom at 8:15 p.m. Appellant also argues that these statements constitute grounds for reversal, however, we do not anticipate this problem arising on remand, and need not address it further here.

ed to the court in appellant's motion for new trial. Point seven of that motion asserted the following:

> The Court erred in giving additional instructions to the jury when they returned to the courtroom and entered the jury box after they had been sent to the jury room with instructions.

(Emphasis added.) While the quoted language is less than a desirable model for such points, it does sufficiently assert that the trial court erred in giving the oral non-pattern instruction and it may reasonably be inferred that the prescribed pattern instruction should have been given. Hence we find no waiver.

■ Now to the merits: MAI–CR2d 1.10 provides:

> It is desirable that there be a verdict in every case. The trial of a lawsuit involves considerable time and effort, and the parties are entitled to have their rights determined once and for all in every case. The twelve jurors chosen to try this case should be as well qualified to do so as any other twelve that might hereafter be chosen. Open and frank discussion by you in your jury room of the evidence in this case may aid you in agreeing upon the facts; however, *no juror should ever agree to a verdict that violates the instructions of the Court, nor find as a fact that which under the evidence and his conscience he believes to be untrue.* Yet each of you should respect the opinions of your fellow jurors as you would have them respect yours, and in a spirit of tolerance and understanding endeavor to bring the deliberations of the whole jury to an agreement upon a verdict.

(Emphasis added.) Rule 28.02(a) authorizes giving this instruction "when appropriate after extended deliberation by the jury." Such instruction is the sole appropriate instruction as Rule 28.02(c) provides that an applicable pattern instruction "shall be given or used to the exclusion of any other on the same subject." It is noteworthy that besides being read to the jury, MAI–CR2d 1.10 "shall be handed to the jury." Notes on Use 2. In this case, Rule

28.02(c) was violated because a *non-pattern oral instruction* was given while the pattern instruction, MAI–CR2d 1.10, was not tendered. The giving or failing to give a pattern instruction is deemed to "constitute error" and the prejudicial effect is a matter to be determined on appeal. Rule 28.02(e).

The trial judge in *State v. Hayes*, 563 S.W.2d 11, 11–12 (Mo. banc 1978) was found to have "instructed orally" by stating the following:

> Mr. Foreman, the communique which I've read of course, cannot be accepted by this Court as a verdict. I'm going to send you back to the Jury room with the admonishment that you are to read all of the instructions which have been given to you and that you deliberate further and thereafter return one of three verdicts. We, the jury, find the defendant, Larry Allen Hayes not guilty or We, the jury, find the defendant, Larry Allen Hayes, guilty as charged and assess his punishment and there you have two alternatives in accordance with the verdict which I have previously referred to or return a verdict that you've agreed upon the guilt but cannot agree upon the punishment.
>
> *I admonish this jury to bring back one of those verdicts* and will ask you to deliberate further and to notify the Deputy when you have further communication to this Court.

(Emphasis added.) The italicized comments from *Hayes* are of similar tenor to the trial judge's remarks in this cause, i.e. that *"you have to give me a verdict in order to complete entire* [sic] *work of the jury. You have to give me a verdict. Guilty or not guilty on each of the three counts placed against you."* (Emphasis added.) But, the offending language was not accompanied by the explanatory language of MAI–CR2d 1.10 that, *"... no juror should ever agree to a verdict that violates the instructions of the Court, nor find as a fact that which under the evidence and his conscience he believes to be untrue."* (Emphasis added.) In *Hayes*, we described the language quoted immediately above as

"a caution [which] is the *crux* of the instruction and its absence tends to detract from the basic duty of a juror and the fundamental concept of a fair trial." *Hayes,* 563 S.W.2d at 12. (Emphasis added.) We concluded in *Hayes* that the oral instruction given "could have had a prejudicial effect on [the] appellant's right to a fair trial." *Id.* The oral instruction given in the case sub judice lacked the "caution" considered so crucial by this Court in *Hayes.* The fact that the jury returned its verdict thirty-five minutes after being admonished *"[y]ou have to give me a verdict,"* when the case had been under submission for seven and three-quarter hours, suggests a sufficient likelihood of prejudice so as to warrant the granting of a new trial. While some of the trial judge's comments can arguably be referenced to support a finding that the verdict was not coerced and as ameliorating any adverse consequences the failure to give the approved instruction may have engendered, we believe the absence of the approved instruction's essential "caution" coupled with the noted comments requires reversal.

The state argues that the decision in *State v. Harvey,* 641 S.W.2d 792 (Mo.App. 1982) is "directly on point" and should be adopted in this case. There the Court of Appeals found that the trial judge had merely inquired whether the jury *"could"* reach a verdict. *Id.* at 799. (Emphasis added.) We believe *Harvey* is distinguishable because the comment here "[y]ou have to give me a verdict" exceeded the boundaries of simply inquiring whether a verdict "could" be reached.

The judgment is reversed and the cause is remanded for a new trial.

BILLINGS, C.J., and DONNELLY, WELLIVER, and HIGGINS, JJ., concur.

BLACKMAR, J., dissents in separate opinion filed.

ROBERTSON, J., dissents and concurs in separate dissenting opinion of BLACKMAR, J.

BLACKMAR, Judge, dissenting.

The Court strains to reverse a conviction, amply supported by evidence, in a very serious case. In so doing, it overlooks two basic principles of appellate practice. First, we normally require that a party take measureable steps to call the trial court's attention to perceived error, at a time when correction can be made. Second, and perhaps more important, we reverse not for error but for prejudice.

The Court excuses counsel from making immediate objection by labeling the trial judge's comments "instructions," and then pointing to Rule 28.02(e), so as to hold that specific objection was unnecessary. I do not believe that the rule should be extended beyond its plain language. It constitutes an exception to the normal rules of trial practice, and should be narrowly applied. Severe mischief may result if every communication between judge and jury is to be held to be an instruction. The word will spread among the criminal bar, "if the trial judge says something that may hurt your client's case, keep quiet. Don't educate the court or the prosecutor. Put it in your error bag. If you speak up the judge may correct the problem and you won't have anything to appeal."

The principal opinion compounds the fault by convicting the trial judge of error for giving a "non-pattern oral instruction" instead of MAI–CR2d 1.10 (now MAI–CR3d 312.10). That instruction is the so-called "hammer" instruction which, in my experience, is not usually welcomed by defendants. I am confident that the trial judge would have given the hammer instruction if defense counsel had asked for it. One thing is sure. In future trials judges who want to play safe will give the hammer more freely, rather than inquiring informally about the jurors' opinions as to the possibility of agreement. I am not at all sure that such a state of affairs would improve the administration of criminal justice in Missouri.

Turning from the point of preservation to the merits, the Court unconvincingly relies on presumed prejudice because of variation from MAI. To buttress its argument,

it lifts one sentence out of context, while overlooking the trial judge's conscientious efforts to make it very clear to the jurors that they were not obliged to agree. When the jurors were called in at 5:05 p.m., for example, the judge explained that "[t]here are those times when a jury tries their best but does not arrive at a verdict, they simply cannot arrive at a majority—not a majority, unanimity in their opinion." He then asked if the forewoman understood that to reach a verdict, all twelve jurors had to agree. She responded in the affirmative, and Judge Mehan continued, "and so I guess what I'm asking you is, if you continue to deliberate, do you think you will arrive at a unanimous verdict? I don't care what the verdict is, will you arrive at a unanimous verdict?" At this time, and again during the exchange which occurred at 8:15, Judge Mehan repeatedly gave the jurors the opportunity to dissent from the opinions expressed by the forewoman, as well as from his decision to send them back for more deliberations. Even the remarks quoted by the majority note Judge Mehan's plea: "do not assume in my questions or in my discussion here with you that I have an opinion as to how long you should deliberate. Should have—should continue, whatever, I have no opinion as to that."

I simply cannot conclude, from a reading of all of the trial judge's colloquy with the jury, that any juror could possibly conclude that he or she was obliged to agree to a verdict which ran against the conscience. The judge clearly asked the jurors whether they thought they could agree; he made it clear that they did not have to. There is no indication of coercion.

We must also assume that the trial judge, in ruling the motion for new trial, gave full consideration to the claims of counsel about prejudicial pressure on the jury, and concluded, in the context of the entire trial, that there was no prejudice. He should not be considered an interested party simply because he is reconsidering his own rulings. The purpose of a motion for new trial is to permit such reconsideration. We should give great weight to his conclusion about the essential fairness of the proceedings. *See Yoon v. Consolidated Freightways, Inc.*, 726 S.W.2d 721 (Mo. banc 1987).

*State v. Hayes*, 563 S.W.2d 11 (Mo. banc 1978), is clearly distinguishable. The remarks of the trial judge quoted in the principal opinion seem to give the jury no alternative. They are virtually commanded to reach a verdict. There is no comparison to the remarks of the trial judge in the case now before us.

One further comment on MAI–CR3d 312.10 is appropriate. The so-called "Allen" or "dynamite" or "hammer" instruction has been much criticized. Numerous versions have been used by various judges over the years. Some contain language which is highly coercive. The history is detailed in 1 Devitt and Blackmar, *Federal Jury Practice and Instructions*, Section 18.14 (1977). The MAI version represents an attempt to provide a simple, non-coercive model for a trial judge who wants to use an Allen-type instruction. It was not designed to foreclose discrete inquiry about the prospects for a verdict. Yet the principal opinion predictably has this effect.

In the view I take I must reach the point about the trial judge's initial error in advising the jury about the authorized punishment. There is no prejudice, because the eventual instruction was correct. Correction did not relate to guilt or innocence. The jury assessed the minimum punishment appropriate to first degree murder conviction. We should not countenance a holding which would make the correction of instructional error impossible.

It is of interest that defense counsel objected to the correction of the instructions about authorized punishment, while remaining silent on the matters on which the reversal is based. By so doing, the trial court was led to believe that there was no further objection to the proceedings between court and jury.

The judgment of conviction should be affirmed.