STATE of Missouri, Respondent,

v.

Tracy L. RICHARDSON, Appellant.

No. WD 53015.

Missouri Court of Appeals,
Western District.

Sept. 9, 1997.

Sean D. O'Brien, Kansas City, for Appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for Respondent.

Before EDWIN H. SMITH, P.J., and BERREY and ELLIS, JJ.

EDWIN H. SMITH, Presiding Judge.

Tracy L. Richardson appeals her jury convictions in the Circuit Court of Jackson County for one count of assault in the first degree, § 565.050 [1], and one count of armed criminal action, § 571.015.1. She was sentenced to concurrent terms of imprisonment

1. All statutory references are to RSMo 1994, unless otherwise indicated.

of twenty years for the first-degree assault and fifteen years for the armed criminal action.

Appellant asserts three points on appeal. In her first point, she alleges that the trial court erred in advising the jury, in effect, to disregard the issue of punishment and then giving the "Hammer" instruction, MAI–CR 3d 312.10, after the jury had announced it was numerically deadlocked at 10 to 2. In her Points II and III, she alleges plain error involving violations of her Fifth Amendment right to remain silent and prosecutorial misconduct, respectively.

Reversed and remanded.

## Facts

Tracy L. Richardson (appellant) and Larry Chris Jeffries (Jeffries) met in June of 1994 through their mutual interest in skydiving, and became romantically involved in the summer of 1995. Their relationship, however, began to deteriorate during a Labor Day weekend skydiving event in 1995. They fought over the course of the weekend, and appellant testified that Jeffries was physically abusive and threatened her. By their return trip to Kansas City, appellant and Jeffries had reconciled. On Monday, September 6, 1995, Jeffries spent the night at appellant's house.

On the following day, Jeffries let himself into appellant's residence after work, although she was not there at the time. Appellant, accompanied by a friend she had met that night, came home at about midnight. Jeffries and appellant began arguing, and he told her that he had packed his things and was leaving. Appellant's friend, who testified that she was afraid for her safety, left at that point. As Jeffries was looking for his keys, appellant blocked a doorway and pointed a gun to his chest, telling him to get on his knees. Appellant later testified that after Jeffries' previous threats, she was afraid he was going to hurt her. In the struggle that ensued, Jeffries received gunshot wounds to his leg, foot and head. He fled the house, and a neighbor called for an ambulance.

Appellant was charged on October 19, 1995, with one count of first-degree assault and one count of armed criminal action. The trial commenced on April 8, 1996, and concluded on April 15, 1996. At the close of the State's evidence and at the close of all of the evidence, appellant made a motion for judgment of acquittal, both of which the trial court denied. The jury commenced deliberations at 12:30 p.m. on Friday, April 12, and recessed at 6:35 p.m. It resumed deliberations on Monday, April 15. That afternoon, the jury advised the court in writing that it was "unable to reach a verdict; vote is 10 to 2." The trial court and jury foreperson then had a discussion on the record in the presence of the jury about the deadlock.

The trial court then proceeded to give the "Hammer" instruction, MAI–CR 3d 312.10, over appellant's objection. The jury returned a verdict of "guilty without sentence" as to Count I, and guilty, with no reference to sentence, as to Count II. Appellant timely filed a motion for new trial on May 9, 1996, after being granted a ten-day extension of time. The trial court overruled the motion on June 5, 1996. On June 21, 1996, the court sentenced appellant to twenty years on Count I, and fifteen years on Count II, to run concurrently. This appeal followed.

### I.

In her first point, appellant claims that the trial court erred in instructing the jury to disregard the issue of assessing punishment and then giving MAI–CR 3d 312.10, commonly referred to as the "Hammer"[2] instruction. In response to this claim, the State initially argues that the trial court did not, in fact, instruct the jury to disregard the issue of assessing punishment. Thus, a determination of whether the trial court did "instruct" the jury to disregard punishment is vital to appellant's claim. Logically then, we address this issue first.

Appellant contends that the trial court effectively instructed the jury to disregard its duty to assess punishment based on the fol-

---

2. This is clearly a misnomer since the term "Hammer" connotes coercion, and the instruction has been approved by the Missouri Supreme Court as being non-coercive in its directives when used properly.

lowing exchange on the record between the trial court and the jury foreperson:

THE COURT: Miss Davis, from your last note, I understand that the last vote was ten to two, I understand that. I do not want to know which side the majority is leaning, whether guilty or not guilty, do you think additional time to deliberate will assist you folks in arriving at a verdict?

FOREPERSON DAVIS: No.

THE COURT: All right. I have an instruction I can give which sometimes I give in a situation such as this if you think a little more time might help. Do you think everybody is so committed that additional time will not help?

FOREPERSON DAVIS: Yes, Your Honor.

THE COURT: You think you're deadlocked?

FOREPERSON DAVIS: Yes, Your Honor.

THE COURT: If the penalty phase is left out and you decide only guilty or not guilty, do you think additional time might help you arrive at a verdict—

FOREPERSON DAVIS: Yes, Your Honor.

THE COURT:—as to the limited issue of guilty or not guilty?

FOREPERSON DAVIS: Yes.

After this exchange, the "Hammer" instruction was given over appellant's objection. The record does not reflect the elapsed time. Thereafter, the jury returned guilty verdicts as to both counts charged, without assessing punishment. Again, the record does not reflect how much time elapsed between the giving of the instruction and the jury's returning with the verdicts. In returning its verdicts, the jury was forced to amend by interlineation the verdict forms provided by the trial court because these forms did not provide for the return of verdicts without an assessment of punishment. This was so because the jury had been originally instructed by the trial court that it was required under the law to assess and declare punishment and was provided verdict forms to accomplish this task.

The State argues that the exchange between the trial court and the jury foreperson did not constitute an instruction by the trial court to the jury that it could return verdicts of guilty or not guilty without considering and assessing punishment. We reject this argument.

■ "Instruction" is defined as "the act of instructing; education; knowledge, information, etc. given or taught; any teaching, lesson, rule, or precept; a command or order; details on procedure; or directions." WEBSTER'S NEW WORLD COLLEGE DICTIONARY 700 (3RD ED.1997). Although we agree that the trial court did not expressly instruct the jury that it could disregard punishment in returning its verdicts, it did, however, essentially, by its comments on the record, indicate to the jury that it was permissible for it to return its verdicts without an assessment of punishment. This then was a "direction" or "detail of procedure" from the trial court as to the law with respect to the jury's responsibility to assess and declare punishment in returning its verdicts and, as such, would constitute an instruction.

■ Further, as to whether the trial court "instructed" the jury that it could disregard punishment, the proof is in the pudding. By returning verdicts without assessing punishment, it can be inferred that the jury thought it had been "instructed" by the trial court that it could return verdicts without assessing punishment. Moreover, it can be inferred that the trial court believed it had instructed the jury that it could disregard punishment in returning its verdicts; otherwise the trial court would not have accepted the verdicts because they would have been "verdicts in improper form" under the written instructions of the trial court, which verdicts it had a duty to reject. *See State v. Zimmerman*, 941 S.W.2d 821, 824–25 (Mo. App.1997) (holding that " '[w]hen a jury returns a verdict in improper form, it is the duty of the trial court to refuse to accept the same and require further deliberations until a verdict in proper form is returned.' ").

Having found that the trial court did, in fact, "instruct" the jury that it could disregard the issue of punishment in returning its verdicts, we must next decide if the manner

in which this instruction was given was reversible error. We hold that it was.

■ An appellate court may not reverse for alleged instructional error, unless there is, in fact, an "error" in submitting the instruction and prejudice results to the defendant. Rule 28.03.

> The trial court must give an applicable MAI–CR instruction where one is available, to the exclusion of any other instruction. Rule 28.02(c) [sic] The giving of or failure to give an instruction in violation of Rule 28.02 or any applicable Notes on Use constitutes error, its prejudicial effect to be judicially determined. Rule 28.02(f); [[*State v.*] *Ervin,* 835 S.W.2d [905], [923] (Mo. banc 1992) ]. A defendant is prejudiced by an erroneous instruction when the jury 'may have been adversely influenced by [it]'. *State v. Lingar,* 726 S.W.2d 728, 738 (Mo. banc 1987), *cert. denied,* 493 U.S. 900, 110 S.Ct. 258, 107 L.Ed.2d 207 (1989), *quoting State v. Rodgers,* 641 S.W.2d 83, 85 (Mo. banc 1982).

*State v. Isa,* 850 S.W.2d 876, 902 (Mo. banc 1993). In determining whether prejudice resulted from an instructional error, the court must consider the instruction in question in light of the facts in the case. *State v. Ward,* 745 S.W.2d 666, 670 (Mo. banc 1988).

MAI–CR 3d 312.02, commonly referred to as a "Kerry Brown" instruction, is the applicable MAI instruction to be given in cases where the trial court, in its discretion and subject to the Notes on Use, informs the jury that if it cannot agree on punishment, it will be fixed by the court. MAI–CR 3d 312.02, Notes on Use, 2; *State v. McAlister,* 652 S.W.2d 269, 271 (Mo.App.1983); *State v. Wells,* 639 S.W.2d 563, 567 (Mo. banc 1982). This instruction is based on § 557.036.2. This section provides in pertinent part that:

> If there be a trial by jury and the jury is to assess punishment and if after due deliberation by the jury the court finds the jury cannot agree on punishment, then the court may instruct the jury that if it cannot agree on punishment that it may return its

verdict without assessing punishment and the court will assess punishment.

§ 557.036.2. The instruction reads as follows:

> The Court will now read to you an additional instruction which will be handed to you with (an) additional form(s) of verdict.
>
> If you unanimously find (the)(a) defendant guilty (as to a particular Count), you should fix his punishment (as to that Count). If, however, after due deliberation, you find (the)(a) defendant guilty (as to a particular Count), but are unable to agree upon his punishment (as to that Count), you will complete the verdict (form) (forms) so stating, and in that event the Court will fix the punishment.
>
> You must bear in mind that under the law it is the primary duty and responsibility of the jury to determine (whether the defendant) (as to each defendant whether he) is guilty or not guilty (as to each Count submitted against (the) (each) defendant), and if (he) (any defendant) is guilty (as to any Count submitted against him) to fix the punishment (as to that Count).

MAI–CR 3d 312.02. This instruction is a revision of MAI–CR 2d 4.50. MAI–CR 3d 312.02, Notes on Use, 1.

■ Obviously, in this case, the trial court did not give the applicable MAI to instruct the jury on verdict possibilities where it could not agree on punishment, that instruction being MAI–CR 3d 312.02. This failure constituted error. *Isa,* 850 S.W.2d at 902. Moreover, it was reversible error, in that in orally instructing the jury that they could return verdicts without assessing punishment, the trial court failed to make the required finding that the jury was unable to agree on punishment and failed to advise the jury that it was their primary duty to fix punishment. MAI–CR 3d 312.02, Notes on Use, 2; *McAlister,* 652 S.W.2d 269, 271–72. By these failures, the trial court "essentially told the jury to return a verdict on the guilt question without giving any consideration to the question of punishment," in effect, "invit[ing] the jury to abdicate its primary duty to fix punishment." *Id.* at 272.

■ This case should serve as a reminder that comments by the trial court to the jury

touching on matters governed by applicable MAI's and their Notes on Use should be avoided, unless the proper MAI procedures are followed. To do otherwise, is to invite appellate scrutiny and risk reversal.

Because we reverse and remand for a new trial on appellant's Point I, we need not address her Points II and III.

### Conclusion

The judgment of convictions and sentences is reversed, and the cause is remanded for a new trial.

All concur.