STATE of Missouri, Plaintiff–Respondent,

v.

Dino E. EVANS, Defendant–Appellant.

No. 25467.

Missouri Court of Appeals, Southern District, Division Two.

Dec. 30, 2003.

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

Irene Karns, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Adriane Dixon Crouse, Office of the Attorney General, Jefferson City, for respondent.

KENNETH W. SHRUM, Judge.

A jury found Dino Evans ("Defendant") guilty of three counts of robbery in the first degree (§ 569.020) and two counts of armed criminal action (§ 571.015).[1] He was sentenced as a "prior, persistent offender." *See* § 558.016.3. Defendant urges reversal under the plain error standard, claiming the trial court "coerced" the jury to render guilty verdicts.[2] This court affirms.

---

1. All statutory references are to RSMo (2000), unless otherwise indicated.

2. An appellate court may, in its discretion, consider "plain errors affecting substantial rights ... when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 30.20, Supreme Court Rules (2003).

## FACTS

Defendant has not challenged the sufficiency of the evidence supporting his convictions and sentences. Suffice it to say, the evidence presented at his two-day trial revealed that Defendant was guilty of committing a string of armed robberies in the early morning hours of September 24, 2000. By information, Defendant was charged with three counts of armed robbery (Counts I, III, and V) and three counts of armed criminal action (Counts II, IV, and VI) for holding up three convenience stores. Defendant was convicted on all counts except for the fourth. The following facts relate to Defendant's claim on appeal that the verdict was coerced.

Defendant's criminal trial began on December 2, 2002. The first day included pre-trial matters, voir dire, and testimony from two witnesses. The second day of trial began at approximately 8:30 A.M., and between that time and prior to a break for lunch, six witnesses testified. After this testimony, a "short break" was taken at which time the court and the attorneys held an instruction conference. The jury was then brought back into the courtroom, whereon the trial judge made the following comments:

> "Let's be seated. I want to talk to you [the jury] briefly about the scheduling, because it probably has changed. We think we will finish the evidence sometime around 2:30 or 3 [P.M.]. Uh, there is some concern about the weather that may or may not come in tonight. But here is the tentative plan is to go ahead and do closings and instructions later this afternoon, and then let you start deliberating. And you'll be here until you reach a verdict, however long that takes.

> "And I'm telling you this right now in case some of you didn't plan on being here past 5:00 tonight and you have something that you absolutely can't get out of or you need to make a phone call and have somebody take care of while you're here. So that's what I'm trying to figure out if we—if I need to send you right back out and let one of you make a phone call or if you think all of you will be able to stay after 5 and it wouldn't be an issue if it takes that long."

Thereafter, the presentation of evidence resumed, both sides rested, closing arguments were presented, and the jury began its deliberations at 3:49 P.M.

During its deliberations, the jury asked several questions. The fourth question, presented to the court at 7:40 P.M., read as follows: "Jury cannot agree on Counts I, II, III, and IV. Do agree on Counts V and VI. Does not appear the dissenting jurors will change their minds. Options?" After a "lengthy discussion" between the court and the attorneys, the jury returned to the courtroom at approximately 8:30 P.M. At that time, the court read the so-called "hammer" instruction (MAI–CR3d 312.10) to the jury.[3] At 10:00 P.M., the

---

3. The "hammer" instruction reads as follows:

"You should make every reasonable effort to reach a verdict, as it is desirable that there be a verdict in every case. Each of you should respect the opinions of your fellow jurors as you would have them respect yours, and in a spirit of tolerance and understanding endeavor to bring the deliberations of the whole jury to an agreement upon a verdict. Do not be afraid to change your opinion if the discussion persuades you that you should. But a juror should not agree to a verdict that violates the instructions of the Court, nor should a juror agree to a verdict of guilty unless he is convinced of the defendant's guilt beyond a reasonable doubt."

The common name of the instruction "is clearly a misnomer since the term 'Hammer' connotes coercion, and the instruction has been approved by the Missouri Supreme Court as being non-coercive in its directives

jury returned with guilty verdicts on Counts I, II, III, V, and VI.

## DISCUSSION AND DECISION

Defendant's argument on appeal focuses upon the court's comments made to the jury prior to deliberations and the giving of the hammer instruction. Defendant's single point relied on maintains that a manifest injustice or miscarriage of justice resulted from these two actions, coercing guilty verdicts, i.e., the "court effectively ordered the jurors to return verdicts."[4] First, he claims the comment, "And you'll be here until you reach a verdict, however long that takes," was a "precursor for coercion" as an "authoritative" directive by the trial judge, as well as a misstatement of the law. Defendant then argues that, when this statement is coupled with the hammer instruction, the jury was effectively told by the judge that it *must* render a verdict.

The State argues reversal is not warranted because neither the comment, nor the hammer instruction were coercive. As to the trial judge's comment, the State characterizes it as simply "[t]he court ... letting the jurors know, albeit inartfully, that their deliberations were going to go past the normal business hours." The State insists that the jury did not and could not interpret the statement as a directive. Continuing, the State claims the giving of the hammer instruction should not be coupled with the pre-deliberation comment because there is no evidence the jury "linked" the two actions.

■ An oral comment made by the trial court during deliberations can be considered an instruction. *State v. Steward*, 734 S.W.2d 821, 825 (Mo.banc 1987); *Rich-*

*ardson*, 951 S.W.2d at 720–21. On the other hand, the giving of a hammer instruction, standing alone, is generally viewed as non-coercive because it promotes open discussion, tolerance, and the desirability of a unanimous verdict while admonishing each juror against basing a verdict on evidence he or she does not believe. *State v. Johnson*, 948 S.W.2d 161, 164[2] (Mo.App.1997). "A reversal is required if it is conceivable the challenged instruction [or instructions] coerced the jury into returning a verdict and nothing in the record is available to find otherwise." *State v. Burns*, 808 S.W.2d 1, 3[4] (Mo.App.1991).

■ A verdict can only be considered coerced when it appears, under the totality of the circumstances, that the trial court was virtually mandating that a verdict be reached, and by implication, it would hold the jury until such occurrence. *Johnson*, 948 S.W.2d at 164[3]. "In the absence of any facts that any juror capitulated to a verdict in which [he or she] did not believe, there was no error." *State v. Mitchell*, 811 S.W.2d 809, 814[11] (Mo.App.1991).

■ The judge's actions here do not, by any reasonable view, amount to a virtual mandate that a verdict be reached. First, there is no evidence that the jury considered the judge's pre-deliberation comment as an instruction or mandate to the jury that it had to render a verdict on each count. Second, when considered in context, it is simply not reasonable or logical to infer that the comment ("You'll be here until you reach a verdict, however long that takes") was considered by any juror as an instruction, or that any juror linked the pre-deliberation comment to the hammer instruction.

when used properly." *State v. Richardson*, 951 S.W.2d 718, 719 n. 2 (Mo.App.1997).

4. By asking for plain error review, Defendant concedes these alleged errors were not preserved.

■ The statement was made in reference to a "tentative plan" on how the trial would proceed and when the jury would begin deliberations. The court had noted that the weather might be a problem, and the jury would be deliberating past normal business hours. The comment was made hours before the jury began deliberating, and, at the very least, six hours before the hammer instruction was read by the court. When considered sensibly and in context without the benefit of hindsight, the only reasonable meaning a jury could have drawn from the comment was that they might be at the courthouse a length of time until a *decision* was made, not necessarily a *verdict.* Nothing occurred during the time between the judge's comment and the giving of the hammer instruction from which it can be reasonably inferred that any juror linked the trial judge's earlier remark to the latter directive; thus, we can find no juror was capitulated to a verdict.[5]

Although the State concedes the comment was "inartful," it certainly did not coerce a verdict. For the reasons stated, it simply is not reasonable to infer that any juror would have considered the judge's pre-deliberation comment in conjunction with the hammer instruction. As such, Defendant's point must fail because the hammer instruction by itself was non-coercive. *Johnson,* 948 S.W.2d at 164. No manifest injustice or miscarriage of justice resulted from the trial judge's comments or the giving of the hammer instruction to the jury.

The judgment of the trial court is affirmed.

PARRISH, J., concurs in separate opinion.

RAHMEYER, C.J., P.J., concurs.

JOHN E. PARRISH, Judge, concurring.

I concur. I agree that the conduct about which defendant complains was not plain error. I write separately to suggest, however, that this opinion should not be read as allowing a trial court carte blanche authority to preface an instruction patterned after MAI–CR3d 312.10 with comments regarding how long a jury would be kept in order for it to reach a verdict. The result reached in this case should, in my opinion, be considered only in the context of the specific facts of this case. A reasonable time passed between the time the trial judge informed the jury it would be staying late in order to permit it to reach a verdict and the time the jury reported its inability to do so, after which the instruction patterned after MAI–CR3d 312.10 was read. The time between the trial judge's remarks regarding the need to stay late and the giving of the instruction negates defendant's claim that the comments were, in effect, a part of the instruction. Another factor negating defendant's argument is the explanation that

---

5. Even if the jury considered the comment as some sort of directive and linked such with the hammer instruction, the latter instruction cured any misconceptions lingering in the minds of the jury because it told the jury to "make every reasonable effort to *reach* a verdict, as it is *desirable* that there be a verdict in every case." (Emphasis supplied.) This clearly informed the jury that a verdict need not necessarily be rendered in every case, i.e., it is merely desirable. In essence, the hammer instruction cured any error committed by

the court's oral pronouncements. *See John-son,* 948 S.W.2d at 165 (finding no prejudice in court's comments that too much time had been spent on the case "not to have a verdict" because hammer instruction "was curative of any potential misconception by jurors that the jury had to return a verdict.") *See also Steward,* 734 S.W.2d at 825–26 (holding "the *absence* of the approved [hammer] instruction's essential 'caution' *coupled* with the noted comments [mandating a verdict be rendered] requires reversal.") (Emphasis supplied.)

the decision to have the jury stay beyond the time it would normally recess was weather related.

Although no plain error occurred in this case, remarks similar to those of this trial judge could, in other circumstances, put a judgment in peril on appeal. In the event an instruction patterned after MAI–CR3rd 312.10 is given, trial courts should make conscious efforts to avoid comments that could be construed as additional explanations of, or reasons for, that instruction.