**STATE of Missouri, Respondent,**

v.

**Victor HARRIS, Appellant.**

**Victor HARRIS, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 65013, 67389.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 7, 1995.

Nancy L. Vincent, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Joanne E. Beal, Asst. Atty. Gen., Jefferson City, for respondent.

AHRENS, Presiding Judge.

Defendant Victor Harris appeals the judgment entered upon his convictions by a jury for second degree robbery, § 569.030, RSMo 1986, and first degree burglary, § 569.160, RSMo 1986. He also seeks an amendment of his sentencing by the court as a Class X offender, § 558.019, RSMo 1986, to two concurrent thirty year terms of imprisonment. Defendant further appeals the denial, without an evidentiary hearing, of his Rule 29.15 motion for post-conviction relief. These appeals have been consolidated for review pursuant to Rule 29.15(l). We affirm.

The evidence adduced at trial showed that at approximately 2:30 a.m. on February 12, 1993, Joyce Warbington was awakened by a noise emanating from inside her home. When she opened her eyes and lifted her head, she saw a man wandering around her residence. She made an unsuccessful attempt to scare the man away by turning on her radio. Rather than leaving, the man entered her bedroom, put his hand on the back of her head, placed a knife to her neck, threatened to kill her and her children if she moved, and told her to give him all her money. In response to his demand for money, Warbington retrieved her purse and wallet containing $125.00.

After the man snatched the purse from her hands, Warbington asked him to leave now that he had what he wanted. He responded, "you know what I want" and then touched her on the buttocks. After threatening her and her children again, the man finally left Warbington's residence. After a few moments, Warbington attempted to run upstairs to her sister's home.[1] The man was standing in the hallway leading to the staircase adjoining Warbington and her sister's homes. He grabbed at Warbington. She eluded him, entered her sister's residence and relayed the entire incident to her sister. Her sister promptly called the police.

After she had calmed down somewhat, Warbington realized that she had seen the man prior to the incident. She recognized him as a man she had briefly seen the previous evening while she was at the home of her neighbor, Norma Hopkins. Based on information supplied by Warbington, the police arrested defendant. At a police lineup,

---

1. Warbington lived in the bottom half of a two-family flat. Her sister lived in the top half.

Warbington identified defendant as both the man she had seen at Hopkins' home and the man who had robbed and threatened her. After a trial, defendant was found guilty of two felonies, second degree robbery and first degree burglary. He now appeals.

■ In his first point on appeal, defendant contends the trial court erred in giving the jury Instruction No. 11, more commonly known as the "hammer" instruction, based upon MAI–Cr3d 312.10. Defendant argues that giving the instruction after the jury deliberated only a short period of time and without establishing that the jury was actually deadlocked coerced a verdict from the jury. We disagree.

■ Defendant concedes that this point raises an alleged error which was not supported by objection at trial and was not preserved in a motion for a new trial. Therefore, our review is limited to review for plain error. Rule 29.12; *State v. Feltrop,* 803 S.W.2d 1, 17 (Mo.1991). Relief will be granted under the plain error standard only if defendant makes a strong, clear showing that the trial court's alleged error so impacted upon his substantial rights that manifest injustice or a miscarriage of justice will result if the error is left uncorrected. *State v. Wise,* 879 S.W.2d 494, 520 (Mo.1994); *State v. Hicks,* 716 S.W.2d 387, 389 (Mo.App.1986).

■ The hammer instruction "may be given when the court deems it appropriate and when the length of deliberations or communication from the jury causes the Court to believe that the jury may be deadlocked." MAI–Cr3d 312.10, Notes on Use 2. The trial court has discretion in deciding whether or not to give the hammer instruction; abuse of that discretion occurs only if the instruction coerces the jury's verdict. *State v. Hernandez,* 876 S.W.2d 22, 24 (Mo.App.1994). "The verdict is only considered coerced when under the totality of the circumstances it appears that the trial court was virtually direct-

ing that a verdict be reached and by implication indicated it would hold the jury until a verdict was reached." *State v. Snider,* 869 S.W.2d 188, 192 (Mo.1993). Factors previously considered by appellate courts include the amount of time the jury deliberates both before and after the reading of the hammer instruction, whether the trial judge knows numerically how the jury is split and the position of the majority and whether the giving of the instruction conforms with the Notes on Use. *State v. Starks,* 820 S.W.2d 527, 529 (Mo.App.1991).

After the jury had been deliberating for approximately one hour thirty five minutes,[2] they sent a note to the court indicating that they were "hung". The jury foreperson told the court that the votes were split 11 to 1. The court, without objection, then gave the hammer instruction to the jury. No additional instructions were given by the court. Approximately thirty minutes later the jury returned with two guilty verdicts. When polled, each and every juror stated that they concurred with the verdict.

We find no error, plain or otherwise, by the trial court in giving the hammer instruction. Defendant did not allege any facts, other than length of time of deliberations prior to the instruction, to infer a juror was coerced into voting for a verdict. In other cases, the appellate court upheld giving the hammer instruction after a comparable period of time. See *Hernandez,* 876 S.W.2d 22 (one hour and forty four minutes); *State v. Harris,* 751 S.W.2d 131 (Mo.App.1988) (two hours and fifteen minutes); *State v. Hyzer,* 729 S.W.2d 576 (Mo.App.1987) (one hour and seventeen minutes); *State v. Crawley,* 478 S.W.2d 344 (Mo.App.1972) (one hour and forty five minutes). Furthermore, the jury's communications in the instant case to the court were sufficient, in and of themselves, for it to believe that the jury may be deadlocked. Point denied.

■ In his second and fourth points on

---

2. Jury deliberations began at 10:43 a.m. and became "deadlocked" at 1:54 p.m. Because the jury recessed for an indefinite period of time for

lunch, we can not precisely determine the amount of time they spent deliberating. Therefore, we adopt defendant's approximation.

appeal,[3] defendant asserts that the motion court erred in denying an evidentiary hearing on his Rule 29.15 motion which alleged ineffective assistance of counsel. Our review is limited to a determination of whether the motion court's findings and conclusions are clearly erroneous. Rule 29.15(j). Its findings and conclusions are clearly erroneous only if a full review of the record leaves us with the definite and firm impression that a mistake has been made. *Feltrop*, 803 S.W.2d at 20.

■ To be entitled to an evidentiary hearing on his post-conviction relief motion, defendant must allege facts, not conclusions, which, if true, would warrant relief; the allegations of fact must not be refuted by the record; and, the matters complained of must have resulted in prejudice to defendant's defense. *State v. Stallings*, 812 S.W.2d 772, 778–79 (Mo.App.1991). To obtain relief on an ineffective assistance of counsel claim, defendant must demonstrate that his counsel's performance was unreasonable under prevailing professional norms and that such unreasonable performance prejudiced his defense. *State v. Loazia*, 829 S.W.2d 558, 568 (Mo.App.1992).

■ We address the issue of prejudicial effect first. See *State v. Clay*, 783 S.W.2d 419, 420–21 (Mo.App.1989). To show prejudice, defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Feltrop*, 803 S.W.2d at 20. A reasonable probability is one sufficient to undermine confidence in the outcome. *Loazia*, 829 S.W.2d at 568.

■ In point two, defendant contends that he was prejudiced when his trial counsel failed to object to the trial court's use of the hammer instruction. As we determined above, the trial court committed no error by submitting the hammer instruction. Trial counsel cannot be found ineffective for failing to make non-meritorious objections. *Sidebottom v. State*, 781 S.W.2d 791, 799 (Mo. 1989). Our review of the remainder of the record convinces us that defendant failed to show a reasonable probability that but for his trial counsel's failure to object to the hammer instruction, defendant would not have been found guilty. Defendant was not prejudiced by counsel's inaction. Point denied.

■ In point four, defendant contends he was denied effective assistance of counsel by his counsel's failure to make a *Batson*[4] challenge to the State's use of its peremptory strikes. Although his arguments are somewhat unclear, it appears defendant is arguing that this failure to object was ineffective for two reasons: (1) his counsel failed to raise the *Batson* issue before the trial court, and (2) his counsel failed to preserve the *Batson* issue for review.

As to his first reason, defendant's motion for post-conviction relief conclusorily asserts, "trial counsel was ineffective for failure to raise a *Batson* claim." Defendant, however, alleges no facts to conclude he was entitled to relief under a *Batson* challenge. More specifically, he provided no allegations as to the racial composition of the venire panel or of the venirepersons peremptorily struck by the State. Therefore, we hold that the motion court properly found that defendant failed to allege sufficient facts to support his first argument.

■ As to defendant's second reason, it is settled that failure to preserve a *Batson* challenge for review is not cognizable under Rule 29.15 because this alleged error does not affect the fairness of defendant's trial. *State v. Loazia*, 829 S.W.2d 558, 569–570 (Mo.App. 1992). Point denied.

■ In his third point, defendant contends that the trial court wrongly sentenced him as a Class X offender, which requires him to serve 80 percent of his thirty year sentences. Defendant argues that pursuant

---

3. We review defendant's points on appeal out of order for purposes of convenience.

4. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

to § 1.160, RSMo 1986, he should receive the benefit of a legislative change in § 558.019, RSMo 1986, a statute mandating minimum prison terms for persons having prior felony convictions. Defendant seeks an amendment of his sentence to conform with the recently enacted § 558.019.2, RSMo 1994. He alleges that this statute only requires him to serve 40 percent of his thirty year sentences. In *State v. Dean,* 898 S.W.2d 704 (Mo.App.1995), the Western District, confronted with exactly the same issue now before us, held that the trial court correctly sentenced Dean under the 1986 version of § 558.019. We are in agreement with our colleagues in the Western District and the scholarly opinion of Judge Spinden. Point denied.

■ Defendant, in his fifth and final point contends that MAI–Cr3d 302.04, which defines proof beyond a reasonable doubt as proof which leaves one "firmly convinced" of defendant's guilt, does not meet the constitutional standard set forth in *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). It is well-settled in Missouri that this instruction is constitutionally sound. *State v. Griffin,* 848 S.W.2d 464, 469 (Mo. 1993). Point denied.

Affirmed.

PUDLOWSKI and GRIMM, JJ., concur.