**STATE of Missouri, Respondent,**

v.

**John L. JOHNSON, Appellant.**

**No. 69054.**

Missouri Court of Appeals,
Eastern District,
Division Four.

May 20, 1997.

John M. Schilmoeller, St. Louis, for appellant.

John Munson Morris, III, Linda A. Fischer, Jefferson City, for respondent.

RHODES RUSSELL, Presiding Judge.

John L. Johnson ("defendant") appeals the judgment entered upon his convictions by a jury for first degree assault, § 565.050, RSMo 1994,[1] armed criminal action,

---

1. All statutory references are to RSMo 1994, unless otherwise indicated.

§ 571.015, and second degree assault, § 565.060. Defendant was sentenced to five years imprisonment for the first degree assault charge and a concurrent term of three years for the armed criminal action charge, and given a fine of ten dollars for the second degree assault charge.

Defendant raises four points on appeal. First, defendant contends that the trial court erred by giving the jury the hammer instruction. Second, defendant argues that the trial court erred in overruling his motion for judgment of acquittal in that there was insufficient evidence to support a conviction of first degree assault. Third, defendant maintains the trial court erred in overruling his *Batson*[2] objections in that the proffered reasons given by the prosecutor were pretextual. Finally, defendant contends the trial court erred in overruling his objections and in permitting the prosecutor to make improper and inflammatory arguments during closing argument. We affirm.

Viewed in the light most favorable to the verdict, the evidence is as follows: On June 21, 1994, Antoine Miller ("victim")and his nephew were sitting in front of his mother's home when they observed defendant, two cohorts, and others coming around the corner. As soon as victim noticed the group coming around the corner, the group began shooting in his direction. Victim ran and jumped through his mother's door and slammed it behind him. Victim's sister, who was also inside the house, was shot in the abdomen by the gunfire.

When the police arrived, defendant and his two cohorts fled, but were quickly apprehended. Victim and his nephew later identified these three individuals as the perpetrators in the shootings.

Defendant was charged by substitute information with assault first degree, armed criminal action, assault second degree, and in the alternative to the second degree assault charge, unlawful use of a weapon. The state alleged that defendant committed the charged crimes along with his two cohorts.

Trial commenced on July 7, 1995. The jury returned a verdict of guilty on all three counts and the trial court subsequently sentenced defendant to a total of five years imprisonment. This appeal follows.

In his first point, defendant contends the trial court "abused its discretion in instructing the jury pursuant to MAI–CR3d 312.10[3] and further admonishing the jury to 'decide the case' in that the additional, spontaneous comments of the court improperly directed the jury that they must decide the case." It is not clear whether the point relied on complains of improper instruction or coercion of the jury by use of the hammer instruction along with the additional comments made by the trial court.

The jury received the case for deliberation at 1:50 p.m. After approximately three hours and forty-five minutes of deliberation, the jury returned to the courtroom and informed the court that they were not able to reach a verdict on Counts I and II. The following colloquy took place between co-defendant's attorney and the court:

Co-defendant's attorney: It seems if they buzzed twice that they felt like they came to that point where they can't go any further.

The Court: I am not going to declare no mistrial.

Co-defendant's attorney: I think all [defendant's attorney] is asking is that you ask them now do they feel like they can—

The Court: That will put me in a box, I am not going to do that. I am going to send them home and bring them back tomorrow

2. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

3. MAI–CR3d 312.10 provides that:
You should make every reasonable effort to reach a verdict, as it is desirable that there be a verdict in every case. Each of you should respect the opinions of your fellow jurors as you would have them respect yours, and in a spirit of tolerance and understanding endeavor to bring the deliberations of the whole jury to an agreement upon a verdict. Do not be afraid to change your opinion if the discussion persuades you that you should. But a juror should not agree to a verdict that violates the instructions of the Court, nor should a juror agree to a verdict of guilty unless he is convinced of the defendant's guilt beyond a reasonable doubt.

morning. We've spent too much time on this case not to have a verdict.

Co-defendant's attorney: I think some of the jurors overheard that, Judge. He gave you a look.

The Court: I don't care what kind of look—

Juror: Judge, if we may, I don't think we're going to have a consensus on those first two counts.

The prosecuting attorney then requested the court to give the hammer instruction and the attorneys for the three defendants objected. The trial court overruled the objections. At approximately 6:00 p.m., the trial court read the hammer instruction to the jury. After reading the instruction, the court added: "Jurors, would you return to the jury room and decide this case?" Defendant's counsel objected that this additional comment to the instruction would coerce the jury into a verdict. Counsel for the three defendants moved for a mistrial as to Counts I and II. The court overruled the objections and denied the request for a mistrial.

After an additional two hours and twenty minutes of deliberation, the jury returned a verdict of guilty on all three counts.

■ A trial court may give the hammer instruction when it "deems it appropriate and when the length of deliberation or communication from the jury causes the Court to believe that the jury may be deadlocked." MAI–CR3d 312.10, Notes on Use 2. The trial court has discretion in deciding whether or not to give the hammer instruction and the court abuses that discretion only if the instruction coerces the jury's verdict. *State v. Harris,* 908 S.W.2d 912, 915 (Mo.App.1995).

■ The hammer instruction itself is not coercive in that it seeks open discussion, tolerance, and the desirability of a unanimous verdict, but admonishes each juror against basing a verdict on evidence he or she does not believe is true. *State v. Jackson,* 896 S.W.2d 77, 80 (Mo.App.1995). "The verdict is only considered coerced when under the totality of the circumstances it appears that the trial court was virtually directing that a verdict be reached and by implication indicated it would hold the jury until a verdict was reached." *State v. Snider,* 869 S.W.2d 188, 192 (Mo.App.1993).

■ Appellate courts consider several factors in determining whether the jury's verdict was coerced. Amongst the various factors are: the amount of time the jury deliberates before and after the reading of the hammer instruction, whether the trial court knows numerically how the jury is split and the position of the majority, and whether the giving of the hammer instruction conforms with the Notes on Use. *Harris,* 908 S.W.2d at 915 (citing *State v. Starks,* 820 S.W.2d 527, 529 (Mo.App.1991)).

■ Defendant maintains in his argument that the trial court's comment, "We've spent too much time on this case not to have a verdict," before giving the hammer instruction and the court's comment, "Jurors, would you return to the jury room and decide this case?", following the instruction, amounted to coercion. Defendant cites *State v. Burns,* 808 S.W.2d 1 (Mo.App.1991), for the proposition that the instruction and the impromptu comments coerced the jury into returning guilty verdicts on the counts on which the jury was deadlocked.

In *Burns,* the trial court read the hammer instruction to the jury after approximately three hours and thirty-five minutes of deliberation. The jury resumed deliberations for another hour and an half before returning to open court. The trial court, without consulting counsel, then said "Ladies and gentlemen of the jury, as you were instructed, you have to return a verdict on each count. You will go back to the jury room and complete your deliberations on Count II." *Id.* at 2. A verdict was delivered ten minutes later, finding the defendant not guilty of one count of robbery and guilty of the count of first degree assault.

In *Burns,* the defendant argued that the trial court erred in instructing the jury that it had to return a verdict on each of the two counts. On appeal, this court found the trial court's instruction that the jury had to return a verdict on each count conflicted with the Missouri Approved Criminal Instructions. *Id.* at 2–3. MAI–CR3d 304.12 states that it is desirable that there be a verdict in every

case, but it does not state that there has to be a verdict. This court noted that as a matter of law the jury did not have to reach a verdict on every count, and therefore, the trial court's instruction constituted a positive misdirection to the jury. *Id.* at 3. In addition to the trial court's oral instruction, this court found that the *Burns'* verdict was coerced because the jury's verdict of not guilty on the robbery charge was inconsistent with the guilty verdict on the assault charge. Further, the jury's verdict was returned within ten minutes after the court erroneously instructed the jury that it had to return a verdict on the two counts. *Id.*[4]

Defendant analogizes the trial court's comment "Jurors, would you return to the jury room and decide this case?" to the comment in *Burns* that the jury had to return a verdict. Defendant's reliance on *Burns*, however, is misplaced. The trial court's comment herein did not state in unequivocal terms that the jurors must reach a verdict in the case. Instead, the trial court's comment was merely a request that the jury continue with its deliberations. Unlike *Burns*, the court's comment was not a positive misdirection to the jury.

Furthermore, the present case is distinguishable from *Burns* in that the jury deliberated for approximately two hours and twenty minutes after the hammer instruction, and the court requested the jury to return to the jury room and decide the case. Additionally, the jury's verdict was not inconsistent in that it convicted defendant on all three counts. If the jury had convicted defendant on some counts and acquitted him of others, a compromised verdict would have been suggested. Finally, there was no indication that the trial court would have held the jury until a verdict was reached. Shortly before the jury returned with its verdicts, the court informed the attorneys that it would declare a mistrial for those counts not decided by the jury the second time the jurors entered open court.

The case herein is more analogous to *State v. Kyles*, 579 S.W.2d 854 (Mo.App.1979). In *Kyles*, this court held that the court's additional comment to the jury immediately after giving the hammer instruction, "I will give this to the foreman. Would you retire and decide this case," was not coercive in nature and was not prejudicial to the defendant.

The statement made by the trial court that "We've spent too much time on this case not to have a verdict" should not have been made in the presence of the jury. If this statement had been made outside the presence of the jury, then there would not have been an opportunity for the jury to believe that it had to return a verdict. However, in this case, we find no prejudice resulted because the giving of the hammer instruction immediately thereafter was curative of any potential misconception by jurors that the jury had to return a verdict. All that remains is the trial court's last statement, "Jurors, would you return to the jury room and decide this case?" which is virtually identical to the statement made in *Kyles*. The statement may be misleading, however, as in *Kyles*, we find the trial court's remark to be neither coercive nor prejudicial to defendant. Further, in light of the time that elapsed between the submission of the hammer instruction and the jury's verdict, which was consistent, we find no error. Point denied.

■ In his second point, defendant contends the trial court erred in overruling his motion for acquittal at the close of all the evidence because of the insufficiency of the evidence. He argues that there was insufficient evidence to prove that he had the necessary specific intent to kill or cause serious physical injury to victim. Defendant maintains that this court must reverse his conviction for first degree assault and the corresponding conviction for armed criminal action. We disagree.

■ In considering a challenge to the sufficiency of the evidence, we accept as true all evidence favorable to the verdict, including all favorable inferences drawn from the evidence, and disregard all contrary evidence. *State v. Grim*, 854 S.W.2d 403, 405

---

4. In a dissenting opinion, Judge Grimm found the trial court's comments to be noncoercive.

*Id.* at 6–7.

(Mo. banc 1993), *cert denied,* 510 U.S. 997, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993). Weighing the evidence to determine whether a defendant is guilty beyond a reasonable doubt is the jury's responsibility and not the function of the appellate court. *State v. Simpson,* 718 S.W.2d 143, 146 (Mo.App.1986). We determine "whether there was evidence from which reasonable persons could have found the defendant guilty." *State v. Mishler,* 908 S.W.2d 888, 891 (Mo.App.1995).

■■■ A person commits the crime of first degree assault if the person attempts to kill or "knowingly causes or attempts to cause serious physical injury to another person." § 565.050.1. Intent is generally not susceptible of direct evidentiary proof and may be based upon circumstantial evidence or inferred from surrounding facts. *State v. White,* 847 S.W.2d 929, 933 (Mo.App.1993). The jury is permitted to draw such reasonable inferences from the evidence as the evidence will permit, and may believe or disbelieve all, part, or none of the testimony of any witness. *Id.* The defendant's mental state may be determined from evidence of the defendant's conduct before the act, from the act itself, and from the defendant's subsequent conduct. *Id.*

Here, the evidence showed that defendant, his two cohorts, and other individuals acted together to fire gunshots into victim's home. Prior to the shooting, victim and his nephew were standing in front of the house when they saw defendant and the others with guns approach them. Victim testified that as soon as he saw the group approach they started shooting. As soon as defendant and the others began shooting, victim jumped through the door and slammed it shut behind him. Later, defendant and his two cohorts fled from the police and were subsequently apprehended.

The evidence in this case included an eye witness who knew defendant prior to these criminal acts. In addition to this evidence, eleven shell casings were recovered around the area where victim saw defendant and his two cohorts seconds before the shooting. Furthermore, a firearm expert testified that at least three different weapons were used after examining the eleven shell casings.

The use of a gun under these circumstances supports the inference that defendant attempted to kill or cause serious physical injury. Reasonable jurors could have concluded from this evidence that defendant attempted to kill or cause serious physical injury to victim by shooting at him. Point two is denied.

We have reviewed defendant's remaining two points and the record on appeal and find no error of law. Extended discussion of the remaining claims of error would have no precedential value. Accordingly, we deny the remainder of defendant's points pursuant to Rule 30.25(b).

The judgment of the trial court is affirmed.

SIMON and KAROHL, JJ., concur.