**STATE of Missouri, Respondent,**

v.

**Garvester BRACKEN, Appellant.**

**No. ED 94242.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Nov. 30, 2010.

---

**50**

Chris Koster, Attorney General, Terrence M. Messonnier, Assistant Attorney General, Jefferson City, MO, for Appellant.

N. Scott Rosenblum, Eric Selig, Erin R. Griebel, Clayton, MO, for Respondent.

## *OPINION*

GLENN A. NORTON, Presiding Judge.

Defendant Garvester Bracken appeals the judgment entered on a jury verdict finding him guilty of one count of forcible rape and one count of attempt to commit deviate sexual assault. We affirm.

### I. BACKGROUND

Bracken was indicted on sixteen charges: six counts of forcible rape, three counts of attempt to commit deviate sexual assault, one count of deviate sexual assault, three counts of domestic assault (third degree), two counts of domestic assault (second degree), and one count of unlawful use of a weapon. The charges against Bracken stemmed from allegations made by his wife ("S.M.B.") that during the last week of March 2008 she was the victim of repeated acts of sexual assault and rape committed by Bracken.

Specifically, S.M.B. alleged Bracken became angry when he found out that while he was out of town S.M.B. had asked her niece's husband to come over and help her with a flooded basement. According to S.M.B., an argument ensued which led to multiple acts of violence by Bracken against S.M.B. over a period of several days. S.M.B. confided in her boss ("Supervisor") about what had been happening, and eventually filed a police report, leading to the charges against Bracken.

S.M.B. testified at trial. During S.M.B.'s cross-examination, defense counsel asked about her prior employment, specifically inquiring about whether she resigned from her prior employer. The State objected to the questioning and the objection was sustained. Defense counsel proceeded to make an offer of proof. Counsel indicated he believed S.M.B. would testify that she was terminated because she lied about a fight with a co-worker. Defense counsel further indicated Supervisor, who would testify for the State, was aware of this employment history, as it was disclosed when S.M.B. applied for her present job. Defense counsel argued testimony regarding S.M.B.'s termination from her prior employer went directly to the issue of her credibility. After the offer of proof, the court renewed its ruling but indicated it might revisit the ruling at a later time.

Later, during the direct examination of Supervisor, the prosecutor asked, "Do you remember anything in particular about [S.M.B.'s] work ethic when she worked for you?" Defense counsel objected on the grounds of relevancy. The court inquired as to the prosecutor's reason for the question. The prosecutor explained he intended to ask Supervisor about how S.M.B.'s demeanor seemed different in March 2008 compared to other periods of her employment. The court called counsel to the bench and proceeded to caution the prosecutor:

> If you get into worth ethic, as you stated, you may open up the door for what happened when she worked [for her prior employer] and I don't know what happened. Now if you want to limit it to her demeanor at work then that's fine.

The prosecutor indicated he intended to limit his questioning to S.M.B.'s demeanor and the examination continued. Supervisor proceeded to testify that during March 2008, S.M.B. appeared distracted and was spending a lot of time on the telephone. When Supervisor confronted S.M.B. about her work behavior, S.M.B. became very nervous and distraught as she described to Supervisor some of the things that had been happening to her at home.

Supervisor was also questioned regarding S.M.B.'s reputation for being truthful. Supervisor indicated that as far as she could determine S.M.B. was a truthful person. During cross-examination, Supervisor was questioned regarding her knowledge of S.M.B.'s employment history. Supervisor indicated most of the investigation into S.M.B.'s background was done by her administrative assistant, and she had no personal knowledge of S.M.B.'s employment history. Supervisor also testified S.M.B. "absolutely had the ability to be truthful." In fact, Supervisor stated that she would not have hired S.M.B. to fill "such a sensitive position where a lot of confidentiality is involved" if she had concerns about S.M.B.'s truthfulness.

Bracken testified in his defense. Bracken also presented alibi evidence, raising questions about S.M.B.'s version of the events, specifically as to the alleged dates of abuse.

Following closing arguments, the jury began deliberations at 3:08 p.m. At 8:10

p.m., the jury presented itself as having a unanimous verdict of guilty on all sixteen counts. However, upon polling the jury, Juror # 943 indicated it was not her verdict. The court asked the jurors to discuss whether further deliberations the following day could result in a unanimous verdict. The jury informed the court they did not believe they were deadlocked and they wished to return in the morning to resume deliberations. Prior to leaving for the day, Juror # 943 made a brief comment about the other jurors wanting to vote her off, but the trial court declined to inquire into the matter.

The following day, Judge Michael Stelzer sat in for Judge Neill. Judge Stelzer noted on the record that a juror had addressed an envelope to him labeled, "important information." The court stated it was improper for the court to have "any sort of communication with one juror." The court further stated it would not read the letter and would leave the envelope unopened.

The jury resumed deliberations, and at 10:45 a.m. the court was informed that the jury was deadlocked. Judge Stelzer addressed the jury stating, "[t]he question the court has then, is since this is a case involving multiple counts, sixteen in total, is the jury deadlocked on all sixteen counts or has the jury reached a verdict on any of the counts?" The foreperson informed the court that the jury was deadlocked as to all counts. Judge Stelzer responded,

> Ladies and gentlemen, it is my discretion whether or not to have you continue to deliberate, and at this time I'm not ready to give up on this nor is Judge Neill from my conversations with him. Therefore, I am sending you back to the jury room with instruction to continue your deliberations.

After the jury returned to the deliberation room, defense counsel moved for a mistrial on the ground that the court was coercing the jury to render a verdict. The motion for mistrial was denied.

At 11:40 a.m., the jury requested to view certain evidence. At 12:24 p.m., the jury returned a guilty verdict on Counts 15 and 16. The jury remained deadlocked as to the other fourteen counts, and a mistrial as to each of those fourteen counts was declared.

Bracken filed a motion for new trial, which was denied by operation of law on December 29, 2009. *See* Missouri Supreme Court Rule 29.11(g) (2010). On January 15, 2010, the trial court followed the jury's recommendation and sentenced Bracken to concurrent terms of ten years for forcible rape and two years for attempt to commit deviate sexual assault. This appeal followed.

## II. DISCUSSION

### A. Motion Taken with the Case

■ The State filed a motion to dismiss the appeal, or in the alternative stay the appeal pending the disposition of the remaining fourteen counts, which was taken with the case. The State argues this Court is without jurisdiction to hear the appeal because there was no final judgment in that only two of the sixteen counts were decided. In support of its motion, the State cites to three Southern District cases holding "a lack of disposition" as to all counts in a criminal case bars appellate review. *See State v. Storer,* 324 S.W.3d 765 (Mo.App. S.D.2010); *State v. Thomas,* 801 S.W.2d 504 (Mo.App. S.D.1991); *State v. Wakefield,* 689 S.W.2d 809 (Mo.App. S.D.1985).

The Eastern District has consistently applied the long-standing rule that a judgment becomes final in a criminal case when sentence is entered or imposed. *See State v. Welch,* 865 S.W.2d 434, 435 (Mo.App.

E.D.1993); *cf. State v. Hotze*, 250 S.W.3d 745, 746 (Mo.App. E.D.2008) (judgment is not final where imposition of sentence is suspended). While recognizing this rule of law, the Southern District in *Wakefield* extended the rule to require judgment and sentence be entered on all counts in a criminal petition in order to confer appellate jurisdiction. 689 S.W.2d at 812. The *Wakefield* court based this extension of the law upon its reading of the Missouri Supreme Court's decision in *State ex rel. Wagner v. Ruddy*, 582 S.W.2d 692 (Mo. banc 1979). Whether a criminal judgment was final for purposes of appeal, however, was not at issue in *Wagner*. In *Wagner*, a trial judge, after imposing sentence and rendering judgment, undertook to set the judgment and sentence aside for the purpose of obtaining a supplementary presentence investigation report. 582 S.W.2d at 692–93. The defendant filed a writ of prohibition and the Supreme Court ultimately prohibited the judge from resentencing the defendant, ruling the trial judge had exhausted his jurisdiction upon entry of the original judgment and sentence. *Id.* at 693. Thus, the "precise question" to be decided in *Wagner* was "when a judgment in a criminal case becomes 'final' for the purpose of *terminating the jurisdiction of the trial court* to modify the sentence imposed." *Id.* (emphasis added). In fact, the *Wagner* Court noted that "[t]he question of when a judgment becomes a final judgment for the purpose of determining whether it may be appealed is more easily resolved," *id.*, by reference to the Missouri Supreme Court Rules and established case law. In so noting, the *Wagner* Court acknowledged the long line of case law holding "a judgment in a criminal case is final for purposes of appeal when the judgment and sentence is entered." *Id.*

We do not find the decision in *Wagner* to require a judgment and sentence on all counts in order to confer appellate jurisdiction and therefore we decline to follow the Southern District line of cases cited by the State. In this case, sentences have been imposed on Counts 15 and 16, and therefore judgment as to those counts is final for purposes of appellate review. The State's motion to dismiss or in the alternative stay the appeal is denied.

## B. Evidentiary Rulings

Bracken's first two points on appeal pertain to the trial court's rulings regarding the admissibility of certain evidence intended to challenge S.M.B.'s credibility. In Bracken's first point relied on, he argues the trial court erred in limiting both defense counsel's cross-examination of S.M.B. and the introduction of extrinsic evidence of prior false statements by S.M.B. In his second point relied on, Bracken argues the trial court "abandoned its role as a neutral arbiter when it intervened on behalf of the State's case to foreclose testimony which would have opened the door to impeachment evidence directed at [S.M.B.'s] character for truthfulness."

### 1. Standard of Review

■ Bracken concedes that the issues raised in points one and two were not preserved for appellate review, but requests this Court review for plain error. Plain error review requires a two-step process. *State v. Washington*, 260 S.W.3d 875, 879 (Mo.App. E.D.2008). First, we must decide whether the trial court committed obvious and clear error affecting substantial rights. *Id.* Second, we must determine whether the clear error found resulted in manifest injustice or a miscarriage of justice. *Id.*

### 2. Evidence of Prior False Statements Made by S.M.B.

█ In point one on appeal, Bracken claims the trial court plainly erred when it limited cross-examination of S.M.B. by preventing defense counsel from inquiring regarding the reason for her termination by her prior employer. Bracken further claims that because S.M.B.'s credibility was a central issue in this case, Bracken should have been given the opportunity to prove prior false statements by S.M.B. through extrinsic evidence. Bracken argues S.M.B.'s credibility was particularly relevant here, where there was no physical evidence and the charges were based solely on S.M.B.'s version of events.

In support of his first point, Bracken relies on *Mitchell v. Kardesch*, 313 S.W.3d 667 (Mo. banc 2010). In *Mitchell*, plaintiff brought a wrongful death action against her husband's treating physician. *Id.* at 674. The Missouri Supreme Court held the trial court erred in prohibiting plaintiff's counsel from: (1) asking defendant physician about his admission in a deposition that he had given a false interrogatory response, and (2) impeaching the physician with the interrogatory answer or deposition. *Id.* at 670. Bracken claims that because *Mitchell* found "the credibility of witnesses is always a relevant issue in a lawsuit," *id.* at 675 (internal quotations omitted), the trial court erred in limiting his cross-examination of S.M.B. and preventing him from introducing extrinsic evidence related to S.M.B.'s character for truthfulness.

It is true that the *Mitchell* court acknowledged "long-standing Missouri law hold[ing] that [a witness] may be asked about specific instances of his or her own conduct that speak to his or her own character for truth or veracity, even where the issue inquired about is not material to the substantive issues in the case." *Id.* at 677. Nevertheless, *Mitchell* also recognized that "[t]he admissibility of evidence lies within the sound discretion of the trial court," and "broad leeway is granted [to the trial court] to insure the probative value of admitted evidence outweighs any unfair prejudice." *Id.* at 674–75 (internal quotations omitted).

In order to determine whether the trial court properly exercised its discretion in limiting the cross-examination of S.M.B. by balancing the considerations of probative value and undue prejudice, we must look to the offer of proof. In the offer of proof, defense counsel indicated he expected S.M.B. to testify that in 2002 or 2003 she resigned from her prior employer because she lied to the employer about a fight with a co-worker. During the offer of proof, defense counsel also indicated Supervisor, who would testify for the State, was aware of S.M.B.'s employment history and "several incidents in the past where she flat out lied." No further details regarding the alleged false statements were given.

Despite the claims made in defense counsel's offer of proof, during cross-examination Supervisor indicated she had no personal knowledge of S.M.B.'s employment history. Supervisor also testified S.M.B. "absolutely had the ability to be truthful" and she would not have hired S.M.B. to fill "such a sensitive position where a lot of confidentiality is involved" if she had questions about S.M.B.'s truthfulness. Moreover, in this case, the offer of proof did not provide any details regarding the alleged "lie", but instead consisted solely of vague claims made by defense counsel. Without details of these prior incidents and alleged false statements it is impossible to evaluate their probative value in determining S.M.B.'s character for truth or veracity. Nor is it possible to evaluate the prejudicial nature of the alleged "lies." Accordingly, we are unable to find the court committed plain error in

limiting the cross-examination of S.M.B. Point one is denied.

### 3. The Trial Court's Alleged Intervention on Behalf of the State

■ Turning to the second point on appeal, Bracken argues the trial court plainly erred by instructing the prosecutor to refrain from a line of questioning which would have opened the door for Bracken to impeach the credibility of S.M.B. Specifically, during the direct examination of Supervisor, the prosecutor asked, "Do you remember anything in particular about [S.M.B.'s] work ethic when she worked for you?" Defense counsel objected on the grounds of relevancy. The court inquired as to the prosecutor's reason for the question. The prosecutor explained that he intended to ask Supervisor about how S.M.B.'s demeanor seemed different in March 2008 compared to other periods of her employment. The court called counsel to the bench and proceeded to caution the prosecutor:

> If you get into worth ethic, as you stated, you may open up the door for what happened when she worked [for her prior employer] and I don't know what happened. Now if you want to limit it to her demeanor at work then that's fine.

The prosecutor indicated he intended to limit his questioning to S.M.B.'s demeanor and the examination resumed. Supervisor testified that during March 2008, S.M.B. appeared distracted and was spending a lot of time on the telephone. Supervisor described S.M.B.'s demeanor as "nervous" and "distraught", particularly when S.M.B. explained to Supervisor what had been happening to her at home.

■ Bracken argues that the trial court, *sua sponte*, directed the prosecutor's examination for the purpose of limiting impeachment evidence. However, the dis-cussion at the bench, which is the basis for Bracken's second point, began with *defense counsel* objecting to the State's questioning of Supervisor regarding S.M.B.'s work ethic. When evaluating judicial comments made as part of evidentiary rulings we consider several factors: (1) whether the trial court volunteered the comment; (2) whether the comment was made in response to an objection as part of the court's ruling; (3) whether the comment was made in the presence of the jury; and (4) whether the comment could be seen by the jury as indicating something prejudicial about the defendant. *State v. Jackson*, 836 S.W.2d 1, 7 (Mo.App. E.D.1992). Applying those factors to this case, we find no plain error occurred. Here, the comment by the court was made in response to an objection and outside the presence of the jury. There is no basis for arguing that the comment could be seen by the jury as indicating something prejudicial about Bracken. Nothing indicates the court's comment in the case was improper. Point two is denied.

### C. Motion for New Trial

Bracken's two remaining points claim the trial court abused its discretion in denying his motion for new trial.

### 1. Standard of Review

■ We review a denial of a motion for new trial for an abuse of discretion. *State v. Peeples*, 288 S.W.3d 767, 775 (Mo.App. E.D.2009). An abuse of discretion occurs when the trial court's ruling "is clearly against the logic of the existing circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.*

### 2. Claim of Verdict Coercion

■ In the first sub-point to his third point on appeal ("sub-point (a)"), Bracken

claims the trial court abused its discretion in denying his motion for new trial because the jury's verdict was coerced. Bracken specifically claims the verdict was coerced when the court, upon knowing the split of the jurors, sent the jury back for further deliberations without giving the cautionary hammer instruction after the foreperson indicated the jury was deadlocked on all issues.

The record shows that on Thursday, September 10, 2009, the jury began deliberations at 3:08 p.m. At 8:10 p.m., the jury presented itself as having a unanimous verdict of guilty on all sixteen counts. However, upon polling the jury, Juror # 943 indicated it was not her verdict. The court asked the jurors whether further deliberations the following day could result in a unanimous verdict. The jury informed the court they did not believe they were deadlocked and they wished to resume deliberations.

The following day deliberations continued. At 10:45 a.m. the court was informed that the jury was deadlocked. Judge Stelzer addressed the jury stating, "[t]he question the court has then, is since this is a case involving multiple counts, sixteen in total, is the jury deadlocked on all sixteen counts or has the jury reached a verdict on any of the counts?" The foreperson informed the court that the jury was deadlocked as to all counts. Judge Stelzer responded,

> Ladies and gentlemen, it is my discretion whether or not to have you continue to deliberate, and at this time I'm not ready to give up on this nor is Judge Neill from my conversations with him. Therefore, I am sending you back to the jury room with instruction to continue your deliberations.

After the jury returned to the deliberation room, defense counsel moved for a mistrial on the ground that the court's instructions were effectively coercing the jury to render a verdict. The motion for mistrial was denied. At 11:40 a.m., the jury requested to view certain evidence. At 12:24 p.m., the jury returned a guilty verdict on two of the sixteen counts.

Bracken claims that the court's failure to utilize the approved hammer instruction upon being informed of the jury's deadlock resulted in a coerced verdict. Bracken argues the possibility of a compromised verdict was heightened by: (1) the presence of a lone juror with no remedial instructions that one should not agree to a verdict of guilty unless he is convinced of the defendant's guilt beyond a reasonable doubt, and (2) the suggestion that a verdict could be reached on some, if not all, of the indicted counts.

"The trial court has discretion in deciding whether or not to give the hammer instruction and the court abuses that discretion only if the instruction coerces the jury's verdict." *State v. Johnson*, 948 S.W.2d 161, 164 (Mo.App. E.D. 1997). A verdict is considered coerced when "under the totality of the circumstances it appears that the trial court was virtually directing that a verdict be reached and by implication indicated it would hold the jury until a verdict was reached." *Id.* There are several factors to be considered in determining whether a jury's verdict was coerced: (1) the amount of time the jury deliberates before and after the reading of the hammer instruction; (2) whether the court knows the numerical split of the jury, and the position of the majority; and (3) whether the instruction given conforms with the MAI's Notes on Use. *Id.*

In this case, the court did not give the hammer instruction as set out in MAI–CR 312.10. Nor can it be said that the instructions given to the jury were the func-

tional equivalent of a hammer instruction. The court did not require the jury to find a verdict, but merely instructed the jury to continue its deliberations. *See State v. Hinkle*, 987 S.W.2d 11, 13–14 (Mo.App. E.D.1999). In fact, the record reflects that it was not the court's intention to keep the jury if a verdict could not be reached. Moreover, when we consider the test for coercion, it does not appear that the court's statements coerced the verdict. Here, after the last instruction to the jury to continue deliberations, the jury continued working for approximately 90 minutes. During this time, the jury asked to review certain evidence. And ultimately the jury reached a verdict on only two of the sixteen counts. We also find it significant that the jury recommended sentences above the minimum for the two counts of which Bracken was convicted. Under these circumstances, it cannot be found that the jury's verdict was coerced. Point three, sub-point (a) is denied.

### 3. Alleged Juror Misconduct

In sub-point (b) to point three and in point four, Bracken argues the trial court erred in denying his motion for new trial because a letter from a juror to the trial court raised a rebuttable presumption of juror misconduct. Bracken bases his claim of juror misconduct on two grounds. First, Bracken argues the juror's letter is evidence "that a juror capitulated to a verdict in which he or she did not believe." In the letter, the juror stated that opposing jurors "pressured me and badgered me into saying guilty." Bracken claims the letter is "indicative of subsequent coercion" in that the juror asserted in the letter she would not be changing her vote. However, as stated above, after consideration of the totality of the circumstances we do not conclude the verdict was coerced. Point three, sub-point (b) is denied.

Second, Bracken claims in point four that the letter to the trial court, which was filed with the court prior to the filing of the motion to new trial, disclosed improper communications with a non-juror during deliberations. Specifically, the juror stated in her letter that she placed a phone call to a non-juror during deliberations. Bracken argues this statement creates a rebuttable presumption of juror misconduct sufficient to invalidate the verdict, and therefore it was an abuse of discretion for the court to deny his motion for new trial without a hearing.

We note that no request was made for a hearing on the motion for new trial. Moreover, the juror was never called as a witness and no affidavit verifying the authenticity of the letter or the truthfulness of the allegations made therein was presented to the court. In the absence of any request for a hearing or an affidavit supporting the motion for new trial, the trial court did not abuse its discretion in denying the motion for new trial without a hearing. And, in any event, "the affidavit or testimony of a juror is inadmissible and is not to be received in evidence for the purpose of impeaching the verdict of a jury." *Storey v. State*, 175 S.W.3d 116, 130 (Mo. banc 2005) (internal quotations omitted). Accordingly, the court did not abuse its discretion in allowing the motion for new trial to be denied by operation of law. Point four is denied.

### III. CONCLUSION

The State's motion to dismiss or in the alternative stay the appeal is denied. We find the trial court did not plainly err in limiting cross-examination of State's witness and in commenting on the prosecutor's line of questioning. We further find the trial court did not abuse its discretion

in denying Bracken's motion for new trial.
The judgment is affirmed.

KATHIANNE KNAUP CRANE and
GEORGE W. DRAPER III, JJ., concur.