**STATE of Missouri, Respondent,**

v.

**Bobby Joe LAMBERT, Appellant.**

**No. SD 30786.**

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 18, 2011.

**158**

Matthew Ward Columbia, MO, for Appellant.

Chris Koster, Atty. Gen. and Richard A. Starnes, Asst. Atty. Gen., Jefferson City, for Respondent.

ROBERT S. BARNEY, Judge.

Bobby Joe Lambert ("Appellant") appeals his conviction for one count of the Class C felony of domestic assault in the second degree, a violation of section 565.073.[1] Following a jury trial, Appellant was sentenced by the trial court to eight years imprisonment in the Missouri Department of Corrections. In his sole point relied on Appellant asserts that the trial court plainly erred in giving the jury "what constituted a non-[Missouri Approved Instructions ("MAI")] hammer instruction after [the jury] informed the trial court that [it] had reached a verdict on three counts, but w[as] at a stalemate on the remaining count...."

Appellant does not challenge the sufficiency of the evidence to support his conviction. "Viewing the evidence in the light most favorable to the trial court's judgment," *State v. Ondo*, 232 S.W.3d 622, 624 (Mo.App.2007), the record reveals that on

---

1. Appellant was acquitted of the class B felony of burglary in the first degree, a violation of section 569.160; the unclassified felony of rape, a violation of section 566.030; and the unclassified felony of armed criminal action, a violation of section 571.015.

All statutory references are to RSMo 2000.

or about December 29, 2007, there was an altercation between Appellant and his estranged wife, C.W. ("Victim"), at Victim's home. As a result of this incident, Appellant was arrested and charged with the following crimes: domestic assault of Victim "by striking her in the face and holding a kitchen knife to her throat;" burglary for "knowingly enter[ing] unlawfully in an inhabitable structure ... possessed by [Victim], for the purpose of committing domestic assault ...;" rape for "knowingly ha[ving] sexual intercourse with [Victim] by the use of forcible compulsion;" and armed criminal action for committing the crime of domestic assault "with and through, the knowing use, assistance and aid of a dangerous instrument."

The trial on these charges began on May 24, 2010, and the jury began its deliberations at 12:46 p.m. on May 26, 2010. During the first three hours of its deliberations, the jury sent out several notes to the trial court including one which requested the "[d]efinition of second degree domestic assault." The trial court conferred with the parties and answered each of these questions. At 4:20 p.m., the jury again sent out a note, this time with the question: "[w]e wonder how it works if we can decide on three charges, but not the other charge." The trial court responded by instructing the jury to "[p]lease read all instructions and be guided by them." At 4:55 p.m., the jury again sent a question to the trial court and the following colloquy occurred:

> THE COURT: All right. Have another message. It is a question from the jury. It is five—or 4:55, and the question is, or statement is, We have three verdicts. We cannot come to a decision on the fourth. We believe we're at a stalemate.'
>
> [Attorneys are present]. We have two options. One is to—to give them a Hammer instruction. The other is to call a mistrial and come back another day.
>
> THE STATE: Do we have to give—My question is this: Do you have to give them the Hammer instruction the first time you bring them in, or just try and ask them—
>
> THE COURT: I—
>
> THE STATE: Take a poll by—
>
> THE COURT: I don't think I have a lot of—I can't sit and have a discussion with them.
>
> THE STATE: I understand.
>
> THE COURT: You know, I can call them and ask them—call them in and ask them all if—if—how many of them think it is a deadlock that cannot be broken.
>
> THE STATE: Yeah.
>
> THE COURT: I'll do that.
>
> THE STATE: And then maybe you can ask that they go back and talk about it some more or not, or whether it's worth doing.
>
> THE COURT: Well, I—I—that—that's—I guess that's a third option. I just wanted to go—
>
> COUNSEL FOR APPELLANT: I'm sorry, what was the third option?
>
> THE COURT: That is the third option, is to bring them in, ask them if they—all of them believe that they are at a deadlock on—on the fourth charge. And if they—I'll let them go back and work some more on it if—I mean, I'd like to see how many of them think that they're at a stalemate. Probably all 12 of them, or they wouldn't have sent this out.
>
> COUNSEL FOR APPELLANT: Could we have a—just five minutes with our client before—
>
> THE COURT: Sure.
>
> COUNSEL FOR APPELLANT: Thank you, Your Honor.

THE COURT: Okay. Let's go off the record. They're conferring with their client.

. . . .

THE COURT: Let me go on—on the record here. Okay. I'm back on the record, and with regard to this last question, [the jury] can't—they have three verdicts and can't come to a decision on the fourth, believe at a stalemate—I—I provided some options to the attorneys. However, I think I'm going to bring them in and see, ask them how far apart they are or ask them if—if they all think they have a stalemate, and—and try to get them to go back and come to a verdict voluntarily. So with that said, bring them in.

. . . .

THE COURT: The jury is—is in the—in the jury box. [Attorneys are present].

I have read the last question that you had, which is, We have three verdicts and cannot'—'we cannot come to a decision on the fourth. We believe we are at stalemate.'

[Madame Foreperson]?

THE FOREPERSON: Yes, sir.

THE COURT: Is that the position of all 12 of the jurors?

THE FOREPERSON: Yes, sir. It's—

THE COURT: All right.

THE FOREPERSON:—hard stuff.

THE COURT: You can have a seat. Let me—Let me say this: There's— This jury's been extraordinarily attentive. I know you've listened to everything. I know you've worked very hard. You've been back there now for four hours trying to come to a verdict, and— and apparently you have in at least three of the—three of the charges. However, this case has also had an extraordinary amount of work, effort and expense that's gone into it by both the defense and the State in [terms] of labor, hours, work, effort. And I know that you—you think that you've been able to—you've reached a stalemate, but I want to ask you to go back one more time and try to do your very best to come up with a verdict in the fourth case, so that these folks don't have to come to do it again. I mean, I'm not even talking about the parties that—that are involved in this. I'm talking about the work effort that has been gone—has gone into it. This—[Appellant] has a lot at stake, [Victim] has a lot at stake, so please try. And I—if you—If you reach a verdict, fine. If you can't, send me another note and let me know.

The jury then returned to its deliberations. Appellant's counsel did not object to this approach by the trial court.

At 5:40 p.m. the jury returned with a verdict of guilty as to the domestic assault charge in the second degree and not guilty as to the other three charges. The trial court then sentenced Appellant as set out above. This appeal followed.

In his point relied on Appellant maintains the trial court erred in making its non-MAI conforming remarks to the jury. He asserts his constitutional rights were violated by the trial court's actions in that "the hammer instruction [given to the jury] omitted key parts of MAI–CR 3d 312.10,[2] improperly included a non-MAI

---

**2.** MAI–CR 3d 312.10, also known as the "hammer instruction," states:

[y]ou should make every reasonable effort to reach a verdict, as it is desirable that there be a verdict in every case. Each of you should respect the opinions of your fellow jurors as you would have them respect yours, and in a spirit of tolerance and understanding endeavor to bring the deliberations of the whole jury to an agreement

reference to the 'extraordinary amount of work, effort, and expense that's gone into it by both the defense and the State,' and effectively coerced a verdict."

■ Appellant admits this issue was not properly preserved below; thus, he requests plain error review under Rule 30.20.[3] " 'Review of jury instructions for plain error is discretionary.' " *State v. Skipper*, 101 S.W.3d 350, 355 (Mo.App. 2003) (quoting *State v. Johnson*, 95 S.W.3d 221, 225 (Mo.App.2003)).

> Instructional error seldom rises to the level of plain error. To show that the trial court plainly erred in submitting a jury instruction, a defendant must go beyond a demonstration of mere prejudice. In the context of instructional error, plain error results when the trial court has so misdirected or failed to instruct the jury that it is apparent to the appellate court that the instructional error affected the jury's verdict, and caused manifest injustice or miscarriage of justice. The defendant bears the burden of showing that plain error has occurred which resulted in manifest injustice or a miscarriage of justice.

*State v. Hibler*, 21 S.W.3d 87, 96 (Mo.App. 2000) (internal citations and quotations omitted). Further, " '[t]he question of whether a verdict is coerced is a matter of plain error.' " *State v. Campbell*, 147 S.W.3d 195, 202 (Mo.App.2004) (quoting *State v. Burns*, 808 S.W.2d 1, 2 (Mo.App. 1991)). " 'By definition coercion of a verdict is a matter affecting substantial rights and involves issues of manifest injustice or miscarriage of justice.' " *Id.* (quoting *Burns*, 808 S.W.2d at 2).

■ We agree with Appellant that the trial court's remarks constituted a non-MAI conforming hammer instruction. Accordingly, in our review we begin our analysis by looking at whether there was evidence the trial court's non-MAI conforming hammer instruction coerced the jury.

■ "In order to establish an abuse of that discretion it must be shown that, based on the record of what was said and done at the time of trial, the verdict of the jury was coerced." *State v. Mason*, 95 S.W.3d 206, 213 (Mo.App.2003) (quoting *State v. Anderson*, 698 S.W.2d 849, 853 (Mo. banc 1985)).

> There are several factors to be considered in determining whether a jury's verdict was coerced: (1) the amount of time the jury deliberates before and after the reading of the hammer instruction; (2) whether the court knows the numerical split of the jury, and the position of the majority; and (3) whether the instruction given conforms with the MAI's Notes on Use.

*State v. Bracken*, 333 S.W.3d 48, 56 (Mo. App.2010). "Where the totality of the circumstances demonstrates that the trial court was virtually directing that a verdict be reached, a verdict of guilty is the product of coercion and must be set aside.' " *Mason*, 95 S.W.3d at 213 (quoting *State v. McNail*, 767 S.W.2d 84, 86 (Mo.App.1989)).

■ "The trial court does not have to accept the jury's claim that it is deadlocked." *State v. Snider*, 869 S.W.2d 188, 192 (Mo.App.1993). It is clear that the trial court "may attempt to facilitate a verdict by ... allowing further time for

upon a verdict. Do not be afraid to change your opinion if the discussion persuades you that you should. But a juror should not agree to a verdict that violates the instructions of the Court, nor should a juror agree to a verdict of guilty unless he is convinced of the defendant's guilt beyond a reasonable doubt.

3. All rule references are to Missouri Court Rules (2011).

deliberation even when a jury indicates that further deliberations would not be helpful in resolving the deadlock." *State v. Cooper*, 336 S.W.3d 212, 215 (Mo.App. 2011); *see Anderson*, 698 S.W.2d at 853. " 'In the absence of any facts that any juror capitulated to a verdict in which he or she did not believe, there was no error.' " *State v. Evans*, 122 S.W.3d 731, 734 (Mo.App.2003) (quoting *State v. Mitchell*, 811 S.W.2d 809, 814 (Mo.App.1991)).

Here, the totality of the circumstances fails to establish that the jury's verdict was coerced. *See Mason*, 95 S.W.3d at 213. "The length of time a jury is allowed to deliberate and the decision whether to read MAI–CR 3d 312.10 are within the discretion of the trial court." *State v. Parson*, 815 S.W.2d 106, 107 (Mo.App. 1991); *State v. Broadux*, 618 S.W.2d 649, 651 (Mo. banc 1981). First, "the amount of time the jury deliberate[d] before and after the reading of the hammer instruction" does not indicate that coercion was present in this instance. *Bracken*, 333 S.W.3d at 56. The jury initially deliberated for four hours prior to telling the trial court that it was deadlocked on one of the four counts. During those four hours, the jury had sufficient time to review the evidence presented, to personally examine most of the exhibits, to re-listen to certain audio recordings played during trial, and to examine the evidence relating to all of the charges. Following the trial court's oral hammer instruction, the jury deliberated an additional thirty to forty-five minutes prior to announcing it had reached its verdicts.[4] "A jury's returning its verdict shortly after the hammer instruction is given does not establish that the jury was coerced to render a verdict contrary to its

will." *State v. Dodd*, 10 S.W.3d 546, 553 (Mo.App.1999). Such a time span between initial deliberations, the giving of the hammer instruction, and the verdict is not indicative of coercion without other evidence. *Smith v. State*, 276 S.W.3d 314, 319 n. 3 (Mo.App.2008) (finding no coercion where the jury deliberated for five hours before announcing a deadlock and then deliberated further for thirty-five minutes after receiving the hammer instruction); *State v. Kinder*, 858 S.W.2d 838, 839 (Mo. App.1993) (finding no coercion where the jury deliberated for almost two and a half hours before receiving the hammer instruction and only ten minutes after the instruction); *State v. Hoopingarner*, 845 S.W.2d 89, 95–96 (Mo.App.1993) (finding no coercion where the jury deliberated for three hours before receiving the hammer instruction and thirty-five minutes after the instruction).

Second, the only information the trial court had was that the jury had three undefined verdicts and was deadlocked on the remaining charge. It would be sheer speculation to conclude that this knowledge by the trial court had any definitive bearing on its oral pronouncement to the jury other than to "try to get them to go back and come to a verdict *voluntarily*." (Emphasis added). Indeed, the trial court's comment herein did not state in unequivocal terms that the jurors must reach a verdict in the case. *See State v. Johnson*, 948 S.W.2d 161, 165 (Mo.App. 1997).

■ Third, while the trial court's statement to the jury did not explicitly follow MAI–CR 3d 312.10 or its Notes on Use, it

4. We note that Appellant argues there was much less than forty-five minutes between the jury's resumption of deliberations and its verdicts; however, this is speculative on Appellant's part and he offers no proof to support this assertion. As such, we rely on the docket entries, the trial court's oral pronouncements found in the transcript, and notations on the notes sent out by the jury to establish the timeline as set out above.

did not convey an improper message to the jury. The hammer instruction, when given as stated in MAI–CR 3d, "is not coercive, as 'it urges frank and open discussion, tolerance, and the desirability of a unanimous verdict but cautions each juror against basing a verdict on evidence he does not believe is true.'" *State v. Copple,* 51 S.W.3d 11, 14 (Mo.App.2001) (quoting *State v. Jackson,* 896 S.W.2d 77, 80 (Mo. App.1995)). Further, it does not tell the jury that a verdict is required; instead, it instructs the jury that a verdict is desirable and that they should make every reasonable effort to reach a conclusion. In the present matter, the trial court urged the jury to "go back one more time and try" to reach "a verdict in the fourth case." It informed the jury that it was "fine" if it reached a verdict, but that it should send another note if it was unable to come to an agreement. While not the exact language of MAI–CR 3d, the trial court's comments here express the same sentiments as MAI–CR 3d 312.10 and merely informed the jury that their ability to reach a verdict was a desirable outcome. There is typically no error where "a trial court 'makes a comment not requiring the jury to find a verdict, but merely to continue its deliberations,'" and for there to be error "'the court [must] make an unequivocal statement that the jurors must reach a verdict in the case.'" *State v. Griffith,* 312 S.W.3d 413, 421 (Mo.App.2010) (quoting *Campbell,* 147 S.W.3d at 203). There was nothing in the trial court's words which would have led the jury to believe a verdict was mandatory or that they would be unduly held if they failed to reach one. The statements contained in the instruction at issue by the trial court were not improperly coercive. We do not find that a manifest injustice or miscarriage of justice resulted from the trial court's comments. *Campbell,* 147 S.W.3d at 204 (internal citations omitted). Point denied.

The judgment and sentence of the trial court is affirmed.

SCOTT, J., and FRANCIS, P.J., concur.